[S. F. No. 15774. In Bank.—July 29, 1938.]

FLORENCE L. TEN WINKEL et al., Appellants, v. ANGLO CALIFORNIA SECURITIES COMPANY (a Corporation), Respondent.

Tobias J. Bricca for Appellants.

Young, Hudson & Rabinowitz for Respondent.

THE COURT.—This is a suit to quiet title by plaintiff, individually, and as executrix of the last will of her deceased husband, to one of the fifteen apartments in the community apartment house, known as View Tower Apartments, located on Hyde Street in the city of San Francisco, and to an undivided one-fifteenth interest in the real property upon which the community apartment house was built. Plaintiff sought a decree against the defendant, Anglo California Securities Company, which claimed to be the owner of the title to the community apartment building in its entirety and to the realty upon which is was constructed. The defendant company based its claim of ownership upon a trustee's deed issued after a sale under a trust deed which covered the realty and the community apartment house building. The defendant filed a cross-complaint to recover the rent of the apartment collected by plaintiff subsequent to the date on which the defendant claims to have acquired title by purchase under the foreclosure sale. Judgment was rendered by the trial court in favor of the defendant, quieting its title to the property set forth in plaintiff's complaint, and giving judgment for $1235, rent already accrued on

said apartment, and for $65 a month rent until the surrender of possession of said apartment by the plaintiff.

The sole question presented for determination is whether plaintiff acquired her interest in the community apartment house free and clear of all encumbrances or whether such interest was acquired subject to a certain deed of trust placed upon the property as a whole on April 30, 1927, and foreclosed on December 21, 1933, upon default in the payment of the promissory note secured by said trust deed.

A summary of the various business transactions relative to the acquisition of their interest in said community apartment house by the Ten Winkels, in chronological form, is necessary in order to obtain an accurate picture of the situation.

Prior to 1926, the plaintiff, Florence L. Ten Winkel, and her husband owned an unencumbered lot, located on Southard Court, north of Greenwich Street, in San Francisco, on which stood a two-story building consisting of two flats. The upper flat was occupied by the Ten Winkels and the lower flat was occupied by their tenants. At the same time, title to an adjoining vacant lot, hereinafter referred to as the "Hyde street lot", stood in the name of Mary Thomas, encumbered by a deed of trust for $13,000 in favor of Anglo California Trust Company. It was stipulated at the trial that the name, Mary Thomas, was a fictitious name used in business transactions by one Cleve Shaffer, a realtor. Each lot had an extensive marine view except that the building on the Southard place lot partially obstructed the view from the Hyde Street lot. During 1926, Cleve Shaffer and Geneva Shaffer, his sister, commenced the promotion of a plan to build a class "A" community apartment house on the Hyde Street lot. This plan involved the acquisition of the Southard Court lot and the tearing down of the two-story building on said lot in order to protect the view of the proposed community apartment house. The proposed community apartment house was to be fifteen stories high with one apartment on each floor. This plan included the incorporation of a nonprofit, nonstock corporation, originally called, "Tower View Community, Inc.", but subsequently known as "View Tower, Inc." to hold title to said property. Each member of the corporation was to enter into a lease for one or more apartments, and all the lessees, acting through a

board of directors of the corporation, were to maintain and manage the apartment house. The sale price of the different apartments was to vary, and the total sale price of all the apartments was to be $320,365. As a result of the negotiations with the Shaffers, the Ten Winkels became interested in exchanging their Southard Court property for an apartment in the proposed community apartment house. On October 25, 1926, the Ten Winkels acknowledged an instrument signed by them and dated October 18, 1926, entitled ''Agreement to Exchange Real Property''. The pertinent portions of said agreement read as follows:

''It is agreed that F. W. Ten Winkel and wife, residents of the City and County of San Francisco, State of California, owners of the following described property situated in the City and County of San Francisco, State of California, to-wit:

''All that certain lot, piece or parcel of land situated on the East line of Southard Court, about 107 feet north of Greenwich Terrace, designated and known as No. 1 Southard Court, size of lot being 30 feet by 56 feet, which we desire to exchange for property owned or to be acquired by Tower View (a corporation to be organized), which said property is now in the name of Mary Thomas, widow, and is situated in the City and County of San Francisco, State of California, and described as follows, to-wit:

''All that certain second floor and its appurtenances, in that certain Class 'A' building to be erected on the lot situated on the East line of Hyde Street, 112 feet 9 inches north of Greenwich Street running thence Easterly to the Westerly line of Southard Court. Lots 25 feet by 56 feet. Said apartment to be built and constructed as per plans and specifications hereto attached and made a part hereof.

''Terms of Exchange, being as follows:

''In lieu of a cash payment, grant, bargain and sale deed to first property hereinabove described, shall be immediately deposited in escrow with the Title Insurance Company of San Francisco, upon conditions and terms herein specified and not otherwise;

. . . . . . . . . . . . .

''4. It is further understood and agreed that all costs of upkeep, and expenses for maintaining and running said Tower View apartment building, shall be based and proportioned to said Ten Winkel, his heirs, successors or as-

signs, on a valuation of Fifteen Thousand ($15,000) Dollars, and no more.

"G. A. Shaffer is authorized to act as agent in negotiating said exchange, and we agree that if the owner of the property secondly above described will exchange said property on said terms and conditions herein specified, we will, within ten days furnish a certificate of title from a reliable abstract company, and a good and sufficient grant, bargain and sale deed, with the restriction above mentioned, conveying title to the property firstly above described.

"It is also agreed that when said agent has secured an acceptance in writing upon the terms and conditions herein contained to make said exchange, and when notice in writing is given to said Ten Winkel that half the apartments in said Tower View are sold, we will deposit with said Title Insurance Company, Fifteen Hundred ($1,500) Dollars, balance of purchase price of said apartment, being the total purchase price of Fifteen Thousand ($15,000) Dollars, and will allow sixty (60) days for the furnishing of satisfactory certificate of title or title search of said property secondly described.

. "Dated October 18, 1926.

"FLORENCE L. TEN WINKEL
"F. W. TEN WINKEL.

"(Duly acknowledged.)"

On the same day of its acknowledgment, October 25, 1926, this instrument, together with another instrument, entitled, "Acceptance" bearing the purported signature of Mary Thomas, but not acknowledged, was recorded in the office of the recorder of the city and county of San Francisco. Said acceptance is in the following words and figures:

"Acceptance

"This agreement witnesseth: That Mary Thomas, or Tower View (a corporation to be organized), or agents or assigns, owner of the piece of real estate secondly herein described, hereby accepts the said proposition of exchange upon the terms and conditions herein mentioned, and agree to furnish a certificate of title to said second floor cooperative apartment, the price of which is Fifteen Thousand ($15,000) Dollars free and clear of all liens or encumbrances except those on building as a whole and then to deliver a proprietary lease and proportionate interest in the said cooperative apartment building to F. W. Ten Winkel and wife, or their as-

signs, or agrees to pay said Ten Winkel the sum of Thirteen Thousand Five Hundred ($13,500) Dollars for said real property first above described, or redeed said property to said Ten Winkel.

"And we further agree to pay customary commission.

"Dated at 560 Sutter St. this 25 day of September, 1926.

"MARY THOMAS.

" (Not acknowledged.)

"Recorded at the request of G. A. Shaffer, Oct. 25, 1926, at 42 min. past 2 p. m."

The question of whether or not the date, September 25, 1926, was the correct date, or was a clerical error, the correct date being October 25, 1926, is a minor controversy between the parties.

On the same day, October 25, 1926, an escrow with the California Pacific Title and Trust Company was opened and an executed deed of the Southard Court lot to Mary Thomas, together with a copy of the "Exchange Agreement" was deposited by Ten Winkel. (It cannot be determined from the record whether or not the "Exchange Agreement" included the purported acceptance of Mary Thomas.) It was stipulated that this particular deed was never recorded and at the time of the trial remained in the possession of the title company.

On November 23, 1926, a deed from Mary Thomas to Cleve Shaffer to both the Hyde Street lot and the Southard Court lot was executed.

On December 23, 1926, a deed from Cleve Shaffer to View Tower, Inc., of both pieces of property, the Hyde Street property and the Southard Court property was executed. (Said corporation was not incorporated at the time of the execution of this deed.)

On March 30, 1927, Mary Thomas executed a deed of trust covering the Hyde Street lot to Western American Realty Company, as trustee, in favor of Anglo California Trust Company to secure the payment of $10,000. (This trust deed renewed an existing trust deed on this same property dated April 12, 1922, by Mary Thomas to the same trustee and in favor of the same beneficiary to secure the payment of $13,000.) Mr. and Mrs. Ten Winkel upon the request of the Anglo California Trust Company joined in the execution of this $10,000 trust deed. On April 4, 1927, this

deed of trust was recorded. On April 25, 1927, a reconveyance of this $10,000 trust deed was executed.

On April 30, 1927, Cleve Shaffer obtained a building loan of $175,000 from the Anglo California Securities Company to finance the building of the said community apartment house. ($150,000 was actually loaned by the trust company, and $25,000 was allowed as a consideration to the trust company for long term financing in lieu of a bond issue discount.) The method of handling the transaction took the following unusual form. Cleve Shaffer signed an installment promissory note, payable $1486.74 per month, naming Mary Thomas, as payee. This note was endorsed by Mary Thomas and delivered to Anglo California Securities Company. The note on its back contained a guarantee by Mary Thomas and G. A. Shaffer. The deed of trust, executed by Cleve Shaffer, given to secure the payment of said promissory note, named Mary Thomas as beneficiary, and the Anglo California Trust Company, as trustee. (It may be noticed that the deed from Mary Thomas to Cleve Shaffer, dated November 23, 1926, had not yet been recorded and record title to the Hyde Street property stood in the name of Mary Thomas; likewise that there had been no recordation of the deed of Ten Winkels to Mary Thomas of the Southard Court property. It was stipulated at the trial, however, that title to the ''View Tower property'' was at the date of the execution of the $175,000 trust deed in Cleve Shaffer.) It is to be particularly noted that the Ten Winkels did not join in the execution of this note or trust deed.

On May 9, 1927, the Ten Winkels entered into a written agreement with ''Tower View Community, Inc.'' (never incorporated). This agreement was signed by Cleve Shaffer, as president, and contains the following provisions: ''And the undersigned hereby agrees to purchase an interest in and a lease of Apartment 2 . . . of the proposed building, and the undersigned agrees to pay for the same the sum of $15,000 in the following manner: As per trade agreement in escrow with the California Pacific Title Company.''

On May 13, 1927, the Ten Winkels paid the $1500 balance due, and receipt for said payment was given to them by the assistant trust officer of the Anglo California Trust Company.

On May 23, 1927, the trust deed covering both the Hyde Street property and the Southard Court property, in which

Mary Thomas was named as beneficiary and the Anglo California Trust Company, as trustee, given to secure the payment of the $175,000 note, was recorded.

On June 1, 1927, another deed from the Ten Winkels to Mary Thomas to the Southard Court lot was executed by the Ten Winkels and on June 4, 1927, recorded.

On June 4, 1927, there was likewise recorded the deed from Mary Thomas to Cleve Shaffer of the Hyde Street and Southard Court property, dated November 23, 1926, and also the reconveyance by the trustee of the $10,000 trust deed to Mary Thomas which had been executed on April 25, 1927, was recorded.

On July 11, 1928, the certificate of the secretary of state certifying the incorporation of View Tower, Inc., was issued, and on August 8, 1928, the by-laws of View Tower, Inc., were adopted.

In November, 1928, the building was completed, and the Ten Winkels moved into apartment No. 2.

On November 10, 1928, a deed from Cleve Shaffer to View Tower, Inc., was recorded, and on November 13, 1928, the board of directors of View Tower, Inc., accepted the property subject to the deed of trust for $175,000.

On November 14, 1928, Ten Winkels signed as lessees a membership holder's lease. On the same day, November 14, 1928, a membership certificate was issued to the Ten Winkels by View Tower, Inc., signed by Cleve Shaffer, as president, and by the secretary of the corporation.

In 1930, the Ten Winkels leased the apartment to tenants.

On August 23, 1933, a notice of default in the payment of the obligation to secure which the trust deed was given was recorded.

December 21, 1933, defendant, Anglo California Securities Company, purchased the property on foreclosure for $100,000.

On January 11, 1934, a deed from the trustee to Anglo California Securities Company was recorded.

On May 26, 1934, this suit to quiet title was commenced.

On November 5, 1934, Florence L. Ten Winkel and the Anglo California Securities Company entered into a written agreement for the collection and escrowing of the rental of said apartment until the final determination of this litigation, said accrued rental to be paid over in accordance with the final judgment in this action.

At the outset it should be stated that no question is raised as to the regularity and legality of the sale upon the foreclosure of the trust deed other than to question whether the trust deed was actually in default at the date of the notice of default. The evidence is amply sufficient, not only to support, but to compel the conclusion, that the obligation was in default on said date. Neither is any question raised with reference to the title to the Southard Court property. The sole question, therefore, for determination is whether the plaintiff acquired any interest in the Hyde Street property of such a nature that she could not be divested of said interest by the foreclosure of the $175,000 trust deed.

An analysis of the transactions between those interested in the exchange of properties prior to April 30, 1927, the date of the execution of the $175,000 trust deed, discloses two possible theories upon which the trial court could justifiably base its decision in favor of defendant. One theory is based upon the acceptance of the authenticity of the written acceptance, and the fact that it constituted a part of the ''Exchange Agreement''. The other theory is predicated upon an entire elimination of the written acceptance from consideration. Whichever theory the trial court adopted in reaching its decision in favor of the defendant, its conclusion was amply supported by the evidence relative to the transactions occurring before April 30, 1927, and is strongly corroborated by the conduct of the Ten Winkels subsequent to said date. Appellant claims that there is another possible construction of the effect of these transactions which would warrant a judgment in her favor. Such construction, however, in the light of the record does not appear plausible to us, and moreover this theory is completely contradicted by the evidence relative to the course of conduct of the Ten Winkels subsequent to April 30, 1927. We shall discuss all three theories.

Respondent argues that the Ten Winkels proceeded with the transaction for the exchange of properties upon the basis of the written acceptance of Mary Thomas, introduced in evidence in the form of a certified copy attached to the written offer of the Ten Winkels which had been recorded. Ignoring for the moment the question of the due execution of said document by Mary Thomas, there can be no doubt of the existence of such a document by reason

of the fact that it was recorded in conjunction with the written offer of the Ten Winkels, and counsel for the appellant so stipulated. There is evidence in the record in the form of carbon copy receipts of the California Pacific Title and Trust Company establishing the fact that on October 25, 1926, the same day on which said offer and acceptance were recorded, Mr. Ten Winkel opened up an escrow with said title company, and deposited therein a deed from himself and wife as grantors to Mary Thomas of their Southard Court property, together with an ''Exchange Agreement''. If the exchange agreement consisted of the offer by the Ten Winkels and the written acceptance by Mary Thomas, then the trial court was amply justified in concluding that the Ten Winkels, by depositing their deed, together with the exchange agreement, in escrow with the California Pacific Title and Trust Company, signified their assent to the terms of said written acceptance, and consummated said deal with full knowledge that one of the terms thereof was that the owner of the Hyde Street property was to furnish a certificate of title to the second floor cooperative apartment free and clear of all liens and encumbrances *except those on the building as a whole.* ■ If the completed contract provided that the interest acquired by the Ten Winkels was to be subject to all liens and encumbrances on the building as a whole, the Anglo California Securities Company who loaned the promoters of the community apartment house the sum necessary for the erection of the apartment house, was justified in loaning their money upon the assumption that the entire building was covered by the trust deed given to secure the $175,000 promissory note and was justified in its contention that upon a regular and proper foreclosure of said trust deed upon default in the payments, it secured title to the community apartment house free from any claim by the Ten Winkels.

■ The written acceptance, in that it varied the terms of the original offer, at most constituted a qualified acceptance and in effect constituted a counter-offer on the part of the original offeree, Mary Thomas. There is no contention made that there was ever any express written acceptance by the Ten Winkels of this counter-offer, but the fact that the Ten Winkels deposited their deed to the Southard Court property, together with this ''Exchange Agreement'' (assum-

ing that the exchange agreement included a copy of the qualified acceptance by Mary Thomas) indicates that they accepted the terms of the counter-offer.

The conclusion that the Ten Winkels had knowledge of the written acceptance of Mary Thomas and were cognizant of its terms, although perhaps not fully aware of the possible effect of the inclusion therein of the provision that the certificate of title to be furnished for the community apartment house should show title free and clear of all liens and encumbrances, except those on the building as a whole, and signified their acceptance of said terms by the deposit of said documents in escrow, is strongly fortified by their conduct in the business transactions which occurred subsequent to April 30, 1927, the date on which the $175,000 encumbrance was placed upon the property. On November 13, 1928, the board of directors of View Tower, Inc., by resolution authorized the acceptance from Cleve Shaffer of the apartment house building subject to the $175,000 encumbrance, thereby recognizing the obligation against the property. On November 14, 1928, the Ten Winkels received their membership certificate which provided that "The member above named (Florence L. Ten Winkel and F. W. Ten Winkel) hereby consents to and accepts the Articles of Incorporation and By-Laws of this corporation as obligatory upon him". In the by-laws, which had been adopted August 8, 1928, it was provided that "the property, business and affairs of the corporation shall be managed and controlled by a Board of Directors", and that "all leases shall be subject to any mortgage or deed of trust which may be of record at the time of the execution of such lease". Furthermore, on November 14, 1928, the Ten Winkels entered into a written membership holder's lease which contained this provision: "And it is expressly stipulated and agreed that this lease is subject to any mortgage or mortgages, or trust deed that may from time to time be executed by the corporations as above specified and duly recorded, or that may have been so executed or assumed by the corporation to secure the erection of said building." It is not reasonable to suppose that the Ten Winkels signed the membership holder's lease which by express terminology subjected their interest to the encumbrance already on the property and duly recorded, or accepted the membership certificate upon the condition that the by-laws of View Tower,

Inc., should be binding upon them, which by-laws likewise subjected their interest to said encumbrance, if they in fact owned an absolute interest in the community apartment house property free from any encumbrance thereon, and had never agreed by previous contract that they should take their interest subject to an encumbrance. It is true that these transactions occurred subsequent to the date on which the $175,000 encumbrance was placed on the property, but they are convincing corroborative circumstances of the correctness of the conclusion that the Ten Winkels knew and acquiesced in the exchange of property upon the terms included in the written acceptance. It is not incredible that the Ten Winkels were willing to enter into such an agreement, although it has turned out to be a bad bargain for them by virtue of this particular provision subjecting their interest to an encumbrance on the building as a whole. It must be borne in mind that the transaction occurred previous to the depression and if all those who had purchased leases in the community apartment house had been able to perform their obligations, doubtless the transaction would have been a financially advantageous one for the Ten Winkels. Although now, in the light of the bitter lessons learned from the depression, such an agreement seems highly imprudent, at the time it was entered into it may well have seemed to the Ten Winkels to present an excellent opportunity for financial gain.

This view of the transactions of the parties, that the Ten Winkels accepted the counter-offer of Mary Thomas, expressed in the written acceptance, as evidenced by the escrow transaction, affords a reasonable explanation for the action of the defendant company in requiring the Ten Winkels to join in the execution of the trust deed executed by Mary Thomas, dated March 30, 1927, for $10,000, given to renew the loan which had previously been for $13,000, and its failure to require the Ten Winkels to join in the execution of the promissory note for $175,000 and the trust deed given to secure its payment. The latter encumbrance was on the "building as a whole" and was given "to secure the erection of said building", and if the Ten Winkels had acquired an interest in the Hyde Street property, by virtue of the agreement between the parties, subject to such encumbrance, their signatures would not be necessary to subject their interest to that encumbrance. It would, however, have

been necessary to subject their interest to the $10,000 trust deed which was not on the building as a whole but was given to renew a prior encumbrance in no way related to the erection of any building on the property.

There are two objections to the theory of an acceptance by the Ten Winkels of the counter-offer contained in the written ''acceptance'' of Mary Thomas. The first objection is that it cannot be ascertained with certainty that the documents deposited in escrow by Mr. Ten Winkel actually included the written acceptance. The written offer of the Ten Winkels was entitled, ''Agreement to Exchange Real Property'', and the receipt of the title company admitted the receipt of the deed from the Ten Winkels, and an ''Exchange Agreement''. It is possible, therefore, that the receipt only referred to the written offer, and that the Ten Winkels did not in fact have notice of the written acceptance.

■ The other objection, and we think it is a valid one, is that the written acceptance was improperly admitted in evidence over the objection of counsel for the plaintiff, and cannot, therefore, form a basis for affirming the judgment on appeal. Upon the offer in evidence of the written acceptance in the form of a certified copy of the records of the recorder's office, showing both the written offer and immediately following it, the written acceptance, counsel for plaintiff objected to its admission upon the ground that no proper foundation had been laid. During the discussion which followed, counsel for the plaintiff stated that he was willing to stipulate that the document formed part of the records of the office of the recorder, but that it had not been acknowledged, and he could not stipulate to the signature of Mary Thomas. We think this was a sufficient objection to the evidence upon the ground that no proof of the due execution of the document had been offered by the counsel for the defense. It was not acknowledged and was, therefore, not entitled to recordation. The fact that although not entitled to be recorded it was in fact recorded in conjunction with another document which was entitled to be recorded, cannot give said document any greater sanctity than it is entitled to in its own right, and cannot grant it immunity from the requirement, applicable to all unrecorded instruments, that their due execution must be established as a proper foundation for their introduction in evidence. ■ Neither was

it rendered admissible in the absence of proof of its due execution by virtue of the provisions of section 1850 of the Code of Civil Procedure to the effect that, "Where the declaration, act, or omission forms a part of a transaction, which is itself the fact in dispute, or evidence of that fact, such declaration, act or omission is evidence as part of the transaction." Until its due execution by Mary Thomas had been established, there was no proof that this written acceptance was any part of the transaction for the exchange of the properties. In addition to the objection to the admission of this instrument in evidence, a motion to strike was made, which through inadvertence was not acted upon by the trial court. In the absence of the slightest attempt to prove the due execution of said document, the objection to its admission should have been sustained, and having been improperly admitted, the motion to strike should have been subsequently granted.

 We have deemed it advisable to give consideration to the written acceptance by reason of the fact that both parties in their briefs have discussed at considerable length its authenticity and possible effect. However, we are of the opinion that the judgment of the trial court was predicated, not upon a consideration of the written acceptance and the conclusion that the Ten Winkels had accepted said counter-offer, but upon the fact that plaintiff utterly failed in the trial court to sustain the burden upon her of establishing by competent proof a consummated contract whereby she and her husband acquired an absolute interest in the Hyde Street property prior to April 30, 1927, the date of the execution of the $175,000 trust deed. Plaintiff repudiated any knowledge of said written acceptance and testified upon the stand that she did not remember ever having seen the document other than in her attorney's office after her suit to quiet title was commenced. However, if the written acceptance be eliminated from consideration, we are confronted with the situation where we are left with only the written offer. The existence of an acceptance is necessary and essential to a completed contract. The burden was upon the plaintiff in order to recover to establish such a completed contract that by its terms she had acquired an interest in said Hyde Street property prior to the execution of said $175,000 trust deed. The first evidence of a definite contract

is to be found in the membership holder's lease entered into between the Ten Winkels and View Tower, Inc., on November 14, 1928, in which she acquired her interest subject to the prior encumbrance upon the property. There is an absence of evidence of any contract coming into being prior to April 30, 1927, whereby the Ten Winkels acquired an interest in the Hyde Street property.

A perusal of the findings of the trial court indicates that its decision was based upon a conclusion that the Ten Winkels acquired no interest by virtue of a consummated contract prior to April 30, 1927, for the findings expressly state with reference to the undivided one-fifteenth interest in the realty claimed by appellant, that, "It is not true that plaintiffs or either of said plaintiffs *ever have been* or now are the owners" of any interest in said real property. The findings with reference to the apartment are to the effect that "It is not true that Florence L. Ten Winkel, individually or as executrix of the last will and testament of F. W. Ten Winkel, deceased, was at any time subsequent to December 21, 1933 (the date of the sale under foreclosure) the owner or in possession of the following described property," (describing the apartment). The membership holder's lease provided merely for the owning of a lease by the Ten Winkels of the designated apartment, the title to the realty and to the community apartment house being held by View Tower, Inc. These findings would indicate therefore that the Ten Winkels acquired their interest by virtue of their membership holder's lease subsequent to April 30, 1927, since the trial court found that they never did become the owners of any interest in the realty. If the Ten Winkels acquired said interest upon the execution of said membership holder's lease, this interest was of course subject to the $175,000 trust deed, a prior encumbrance upon the property, and was wiped out upon the sale under the foreclosure of the $175,000 trust deed. However, it is sufficient simply to say that the record fails to show that the proposition for the exchange of the Southard Court property by the Ten Winkels for an interest in the Hyde Street property ever progressed to the state of a consummated contract prior to April 30, 1927. The burden was upon the plaintiff to establish this fact, and having failed to do so, the court was compelled to find in favor of the defendant.

■ It is plaintiff's claim, as we understand it, that the contract was a unilateral contract which consisted of the original offer of the Ten Winkels, duly acknowledged and recorded, and the acceptance by Mary Thomas of the consideration offered with the proposal (the deed by the Ten Winkels to their Southard Court property). Section 1584 of the Civil Code provides that, "acceptance of the consideration offered with a proposal is an acceptance of the proposal". The written offer, together with an acceptance of the benefit therefore, according to plaintiff, constituted the contract. It may be conceded that such an inference could possibly be drawn. But such inference is absolutely contradicted by the subsequent conduct of the original offerers, that is to say, by the acceptance of the membership certificate by the Ten Winkels and their execution of the membership holder's lease subjecting their interest to the encumbrance on the building as a whole. However, it suffices to say, that the trial court did not accept this theory of the transactions of the parties. In our opinion, as we have previously indicated, the trial court was amply warranted in reaching the opposite conclusion.

We have not included in our discussion any reference to the written contract between the Ten Winkels and Tower View Community, Inc., of May 9, 1927, to exchange their property as "per trade agreement in escrow with the California Pacific Title Company". Tower View Community, Inc., was not incorporated at that time, or ever, and we are of the opinion that said agreement neither adds to nor detracts from any of the rights of either party. Neither have we discussed the question of constructive notice because it is not materially involved herein. The respondent freely admitted not only constructive notice of the written offer of the Ten Winkels but *actual* notice of it.

It follows from what we have hereinbefore said that the interest in the Hyde Street property acquired by appellant was subject to the $175,000 trust deed, and being so subject, appellant's interest in said community apartment house was foreclosed by the sale under the foreclosure of said trust deed.

The motion of respondent to take additional evidence is denied. The judgment of the trial court is hereby affirmed.

Rehearing denied.