[No. C027262. Third Dist. Oct. 28, 1998.]

JOHN ROTH, Plaintiff and Appellant, v.
GEORGE E. MALSON, Defendant and Respondent.

**COUNSEL**

Wanland & Bernstein, Donald M. Wanland, Jr., and Daniel Boone for Plaintiff and Appellant.

Rich, Fuidge, Morris & Iverson, Roland K. Iverson, Jr., and Kathleen M. Bock for Defendant and Respondent.

## Opinion

**SIMS, Acting P. J.**—In an action seeking specific performance of an alleged contract for the sale of real property, the would-be buyer, plaintiff John Roth, appeals from summary judgment entered in favor of the property owner, defendant George E. Malson.

Plaintiff buyer made a written offer to buy real property. Defendant seller made a written counteroffer on a standard form adopted by the California Association of Realtors. The form had a signature line, entitled "ACCEPTANCE," whereby plaintiff could accept the counteroffer. Instead of signing the "ACCEPTANCE" portion of the form, plaintiff signed a different portion of the form, entitled "COUNTER TO COUNTER OFFER." In a portion of the form denominated "CHANGES/AMENDMENTS," plaintiff also wrote in certain terms of the purchase, although it ultimately turned out that these terms did not vary from the terms of defendant's counteroffer.

The trial court concluded no contract was formed because plaintiff's "COUNTER TO COUNTER OFFER" was a qualified acceptance of defendant's counteroffer. We agree with the trial court and shall affirm the judgment in favor of defendant.

### FACTUAL AND PROCEDURAL BACKGROUND

In July 1995, defendant entered into an agreement ("AUTHORIZATION TO SELL") with Stromer Realty Company of California (Stromer Realty), authorizing it to serve as his agent to sell a parcel of 23.8 acres of real property in Sutter County for $47,600 in cash or terms acceptable to the seller.

On October 25, 1995, plaintiff executed on Stromer Realty's standard "SALES AGREEMENT AND DEPOSIT RECEIPT" form an offer to buy the property for $41,650 cash, escrow to close within 30 days of acceptance. (Plaintiff signed the documents at issue in this case "John Roth for Roth Partners.")

On November 2, 1995, defendant executed and transmitted a counteroffer to plaintiff's original offer. A copy of this key document is attached hereto as appendix A. The counteroffer was made on a California Association of Realtors' standard form labeled "COUNTER OFFER" and indicated, in a

portion marked "CHANGES/AMENDMENTS," that "THE PURCHASE PRICE SHALL BE $44,000." The form indicated defendant accepted all other terms and conditions of plaintiff's offer. By its own terms, the counteroffer would expire if not accepted by November 8, 1995.

The counteroffer document contained an area called "ACCEPTANCE," with lines for date and signature. Below that was a solid black line and below the line appeared a portion labeled in bold print "COUNTER TO COUNTER OFFER."

On November 6, 1995, plaintiff signed and dated the portion labeled "COUNTER TO COUNTER OFFER" and, on lines provided for "CHANGES/ AMENDMENTS," handwrote "Price to be 44,000.00 as above. Escrow to close on or before Dec. 6, 1995. All cash." (See appen. A.) The line for an expiration date for the counter-counteroffer was left blank. Plaintiff conveyed the form to Stromer Realty by the November 8 deadline for expiration of defendant's counteroffer.

Plaintiff never signed the document in the area marked for "ACCEPTANCE" of defendant's counteroffer. His position is that he meant to communicate an acceptance. His deposition suggests he signed in the wrong place by mistake, and his appellate brief also indicates he mistakenly signed on the wrong line.

Defendant never accepted plaintiff's counter-counteroffer. Instead, on November 16, 1995, defendant through his attorney advised Stromer Realty by telephone that defendant rejected plaintiff's counter to counteroffer and was taking the property off the market. This conversation was memorialized in a letter defendant sent by fax to Stromer Realty on November 17, 1995.

On December 27, 1995, plaintiff filed a complaint for specific performance and damages. The complaint alleged (1) specific performance, (2) breach of contract as an alternative theory, with respect to plaintiff's November 6, 1995, signing of the "COUNTER TO COUNTER OFFER" document, (3) breach of contract with respect to the November 17, 1995, document in which plaintiff purportedly accepted a supposed offer reflected in the "AUTHORIZATION TO SELL" between defendant and Stromer Realty, (4) intentional misrepresentation as an alternative theory, and (5) negligent misrepresentation as an alternative theory.[1]

The parties filed cross-motions for summary judgment/summary adjudication. Plaintiff filed a motion seeking summary adjudication of the specific

---

[1]On appeal, plaintiff raises no issue with respect to his misrepresentation claims. Instead, plaintiff agrees his entire complaint fails if no contract was formed by his original sales agreement and the "COUNTER OFFER" document. He states in his appellate brief "if no contract was formed then [defendant] prevails."

performance claim, arguing that if one looked to the substance rather than the form, his handwritten notes under "CHANGES/AMENDMENTS" in the counteroffer form did not really change anything, and therefore his signature must be treated as an acceptance forming a binding contract. Defendant opposed plaintiff's motion and filed his own motion for summary judgment or summary adjudication on the basis that plaintiff could not establish an essential element of each cause of action—formation of a contract. Plaintiff opposed defendant's motion.

The trial court issued a written ruling denying plaintiff's motion and granting defendant's motion for summary judgment. In its formal order, the trial court reiterated that no binding agreement was formed because there was no valid unqualified acceptance of defendant's counteroffer. Since there was no binding contract, and since all counts in the complaint turned on the existence of a binding contract, defendant was entitled to summary judgment.

Plaintiff appeals from the ensuing judgment.

### DISCUSSION

The sole issue presented by plaintiff on appeal is whether plaintiff's signature on the counteroffer form constituted an acceptance creating a contract. If it did not, then defendant is entitled to summary judgment because he has negated a necessary element of plaintiff's case—the existence of a contract. (Code Civ. Proc., § 437c, subd. (o)(2).) Our review is de novo. (*Villa* v. *McFerren* (1995) 35 Cal.App.4th 733, 741 [41 Cal.Rptr.2d 719] [review of summary judgment is de novo]; *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839] [interpretation of written instrument is judicial function where interpretation does not turn on credibility of extrinsic evidence].)

Plaintiff contends the trial court erred in granting summary judgment to defendant because plaintiff gave an absolute, unqualified acceptance—in substance though not in form—to defendant's counteroffer and thereby formed a binding contract. Plaintiff argues that, because his response to defendant's counteroffer did not really change any of the terms of the counteroffer, plaintiff's writing actually constituted an acceptance of defendant's counteroffer.

Since the parties have so assumed, we also will assume for the sake of argument that plaintiff's response to the counteroffer did not vary any terms of the proposal. We disagree with plaintiff's position.

It is, of course, basic hornbook law that the existence of a contract is a necessary element to an action based on contract, regardless whether the plaintiff seeks specific performance or damages for breach of contract. (4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 476, p. 570; 5 Witkin, *supra*, § 741, p. 199.) Consent of the parties is essential to the existence of a contract. (Civ. Code, § 1550.) Consent must be free, mutual and "Communicated by each to the other." (Civ. Code, § 1565.)

"An acceptance must be absolute and unqualified, or must include in itself an acceptance of that character which the proposer can separate from the rest, and which will conclude the person accepting. A qualified acceptance is a new proposal." (Civ. Code, § 1585.)

Contract formation is governed by objective manifestations, not subjective intent of any individual involved. (E.g., *Atlas Assurance Co.* v. *McCombs Corp.* (1983) 146 Cal.App.3d 135, 144 [194 Cal.Rptr. 66]; *Meyer* v. *Benko* (1976) 55 Cal.App.3d 937, 942-943 [127 Cal.Rptr. 846].) The test is "what the outward manifestations of consent would lead a reasonable person to believe." (*Meyer* v. *Benko, supra,* 55 Cal.App.3d at pp. 942-943.)

Here, in responding to defendant's counteroffer, plaintiff's response on its face presented itself as a counter-counteroffer. Plaintiff's principal argument is that because his "CHANGES/AMENDMENTS" did not really change or amend anything, his response should be construed as an acceptance rather than a counter-counteroffer. We disagree.

Defendant's position (that no contract was formed) finds support in *Krasley* v. *Superior Court* (1980) 101 Cal.App.3d 425 [161 Cal.Rptr. 629] (*Krasley*). There, after several offers and counteroffers were exchanged, a would-be buyer (the plaintiff) submitted an offer on a standard real estate broker's form, with additional language providing for subordination of the sellers' interest to a construction loan and stating the offer expired in two days and time was of the essence. The day after the buyer's offer lapsed, one of the sellers signed and delivered a boilerplate counter-counteroffer form, which reserved the right of the sellers to accept any other offer prior to receipt of the buyer's acceptance, and which contained two alternative proposals: either to agree to the previous terms of buyer's offer with the addition of an acceleration clause, or, alternatively, to enter into a new deal with new terms. The buyer did not communicate his alleged acceptance of the first alternative proposal in the sellers' counter-counteroffer until the sellers had accepted another offer from a third party. The buyer sued for specific performance, contending the sellers' counter-counteroffer was an acceptance of the buyer's lapsed offer. (*Id.* at p. 429.) The sellers moved for

summary judgment, which was denied by the trial court. The appellate court issued a writ of mandate directing the trial court to enter summary judgment for the sellers. As concerns us here, the *Krasley* court held that, even though time was of the essence and the lapse provisions of the buyer's offer were for his benefit and could have been waived by him, the counter-counteroffer proposed by the sellers was not an acceptance of plaintiff's offer, but an entirely new offer. (*Id.* at p. 430.)

*Krasley* said: "[C]redulity is strained to treat a document entitled 'Counter Counter Offer,' which begins by reciting 'This is a counter offer,' as an acceptance of anything. It is argued factual issues exist whether the new term requiring an acceleration clause, so varied the terms of the December 27 offer as to constitute a new offer rather than an acceptance. That approach is hypertechnical and misses the point. Contract law being a question of objective manifestation of intent, the courts should treat a document as what it says it is unless extrinsic evidence supplies notice of ambiguities [citation]. No trade custom or usage evidence is contained in any declaration nor has any been suggested which would tend to show this counteroffer is an acceptance of anything. It is therefore irrelevant whether adding an acceleration clause requirement to the terms of the December 27 offer materially varied its terms. The CCO [Counter Counter Offer] was a new offer." (*Krasley, supra,* 101 Cal.App.3d at p. 430.) The *Krasley* court then went on to determine the sellers were also entitled to summary judgment on other grounds, i.e., the original offer was not sufficiently specific to enforce. (*Id.* at pp. 430-431.)

*Krasley* suggests that a purported acceptance denominated a "counteroffer" categorically constitutes a qualified and therefore invalid acceptance.[2] We do not have to go so far in this case. Ours is not a case in which plaintiff simply wrote "I accept" in the space denominated "counteroffer." Rather, plaintiff inserted express terms (denominated "CHANGES/AMENDMENTS")

---

[2]Plaintiff contends *Krasley* is distinguishable for five reasons, as follows: (1) the counteroffer in *Krasley* was a separate document and began by reciting, "This is a counter offer"; (2) the buyer in *Krasley* attempted to communicate his acceptance one day after the offer lapsed; (3) the purported acceptance in *Krasley* included a new condition, inclusion of an acceleration clause; (4) *Krasley* also found the alleged contract was not sufficiently specific to enforce because it contained a subordination requirement without specifying the terms of subordination; and (5) *Krasley* said it was obvious the parties would have had to engage in further negotiations, particularly concerning financing, in order to have an enforceable agreement.

However, none of the distinguishing features cited by plaintiff undermine applicability of the underlying principle expressed in *Krasley* and quoted above, that a counteroffer which on its face says it is a counteroffer, is a counteroffer, and it is irrelevant whether the counteroffer materially varies the terms of the earlier offer. That the *Krasley* court continued on to discuss other grounds for the judgment (lack of specificity) does not undermine its holding that the counteroffer was a counteroffer.

that required the parties to the transaction and their agents to analyze whether the terms of the counter-counteroffer in fact matched up with the terms of the counteroffer. Viewing the counter-counteroffer in its entirety and objectively, the counter-counteroffer called for a response from the seller before a contract would be formed. In the absence of a response from defendant, no contract was formed.

This principle is sound. There is no reason to put the parties or the courts in the position of comparing and contrasting terms (described as "CHANGES/AMENDMENTS") to determine whether there is any material variance when a response to a counteroffer is on its face presented as a counter-counteroffer.

We agree with the trial court in this case, which stated in its ruling on summary judgment: "Wisely, the real estate industry has developed standardized forms for the use by the general public in buying and selling real estate. [The form used here] provide[s] easily understood information and procedures to facilitate the transfer of real property between buyer and seller. As an added boon, litigation is, no doubt, minimized. Yet people still manage to create problems, intentionally or unintentionally. This case is a perfect example. The buyer, having deliberately or unintentionally, signed the form in the wrong place, now seeks to enforce the 'agreement.' Can any reasonable person ignore the possibility that a plaintiff who seeks to enforce such an 'agreement' <u>in his favor</u> would not use his actions <u>to avoid</u> the purchase if it were <u>not in his favor</u>. This potential for game-playing must be avoided at all costs. The form was clear. The facts are clear. Plaintiff did not absolutely and clearly accept the counter offer." (Original emphasis.)

Plaintiff considers it significant that his response to defendant's counteroffer did not give a deadline (as did the original offer and the counteroffer), which assertedly demonstrates that plaintiff was communicating an acceptance rather than a counter-counteroffer. We disagree. The absence of a deadline does not make plaintiff's response an acceptance rather than a counter-counteroffer. Similarly, we reject plaintiff's argument that the fact he responded before the counteroffer's deadline shows he was communicating an acceptance rather than a counter-counteroffer. Also unpersuasive is plaintiff's argument that his response should be construed as an acceptance because he signed the document at the bottom, which is "where most people sign documents."

Plaintiff claims California courts have defined a qualified acceptance as one which *varies* the terms of the original offer, thereby constituting a counteroffer. However, the cited authority, *Ten Winkel* v. *Anglo California S. Co.* (1938) 11 Cal.2d 707 [81 P.2d 958], merely said that the written

acceptance at issue in that case, "in that it varied the terms of the original offer, at most constituted a qualified acceptance and in effect constituted a counter-offer on the part of the original offeree . . . ." (*Id.* at p. 717.) *Ten Winkel* thus did not make variance of terms a sine qua non of a qualified acceptance.

Plaintiff claims Civil Code section 1651[3] supports his case, because it states written clauses prevail over printing, and therefore we must disregard the printing on the document which characterizes plaintiff's response as a counter-counteroffer rather than an acceptance. According to plaintiff, the handwritten parts show a contract was formed. However, even assuming for the sake of argument that Civil Code section 1651 applies to determinations whether a contract exists, as opposed to interpretation of an existing contract (a point disputed by defendant), the statute does not save plaintiff in this case. Plaintiff asks us to disregard the printed words "COUNTER TO COUNTER OFFER" and "CHANGES/AMENDMENTS."[4] However, Civil Code section 1651 calls for disregard of printed portions only when written and printed portions are repugnant. (Civ. Code, § 1651; e.g., *Burns v. Peters* (1936) 5 Cal.2d 619, 623 [55 P.2d 1182]; *University of South. California v. Bryson* (1929) 103 Cal.App. 39 [283 P. 949].) An example of repugnant provisions is where one provision allows prepayment and another prohibits prepayment. (*Gutzi Associates v. Switzer* (1989) 215 Cal.App.3d 1636 [264 Cal.Rptr. 538].) Here, plaintiff fails to point to any handwritten provisions which actually conflict with printed provisions. Plaintiff's signature and handwritten remarks are not so repugnant with the printed portions of the form as to compel disregard of the printed words, even accepting plaintiff's claim that his handwritten remarks did not vary the terms of the proposed agreement. Moreover, disregard of the printed words in this case would leave the written words in a vacuum. Thus, we conclude Civil Code section 1651 does not apply in this case.

■ Plaintiff argues our conclusion gives the contract an unreasonable interpretation, in violation of Civil Code section 1643, which provides: "A contract must receive such an interpretation as will make it lawful, operative,

---

[3]Civil Code section 1651 provides: "Where a contract is partly written and partly printed, or where part of it is written or printed under the special directions of the parties, and with a special view to their intention, and the remainder is copied from a form originally prepared without special reference to the particular parties and the particular contract in question, the written parts control over the printed parts, and the parts which are purely original control those which are copied from a form. And if the two are absolutely repugnant, the latter must be so far disregarded."

[4]In his reply brief, plaintiff says he does not want us to disregard the printed portions but merely weigh them and give them less weight than the handwritten parts of the document. This different spin by plaintiff does not alter our conclusion.

definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." However, the issue here is not contract interpretation but rather the determination whether a contract exists. The statute itself contains the qualifier concerning the intention of the parties; thus, the statute is not violated if the objective manifestations of the parties' intent disclose lack of acceptance of an offer to make a contract.

■ We conclude the trial court properly entered summary judgment in favor of defendant. We therefore need not address plaintiff's request that this court grant or direct the trial court to grant plaintiff's own cross-motion for summary adjudication and a specific performance decree.

### DISPOSITION

The judgment is affirmed. Defendant shall recover his costs on appeal.

Hull, J., concurred.

**RAYE, J.**—I respectfully dissent.

As there are no special rules restricted to real estate contracts or to standard form agreements, the disposition of this matter is controlled by general principles of contract law. The majority accurately summarizes the applicable principles and I have no quarrel with their explication of them. Their opinion falters not in misstating the general principles but in failing to apply them to the standard form agreement before us. Their bright line standard, adopted from *Krasley* v. *Superior Court* (1980) 101 Cal.App.3d 425 [161 Cal.Rptr. 629], is enticing—judicial decisionmaking becomes a simple matter of inspecting boxes on standard forms—but runs counter to the reasonable expectation of the parties, an overarching standard which heretofore has governed our decisionmaking in this area.

The controlling principles can be easily summarized: A contract requires an offer and acceptance. As a general proposition, an acceptance must manifest an unconditional agreement to all the terms of the offer and an intention to be bound thereby. More particularly, an acceptance must comport with two separate but related principles. First, an acceptance must not change, add to, or qualify the terms of the offer. Second, in manifesting an intent to be bound an acceptance must be clear, positive and unambiguous; an acceptance, though consistent with the terms of the offer, can be so equivocal that it fails to clearly express an intention to be bound. As the majority acknowledges, the acceptance in this case complies with the first principle; though a counteroffer in form, it does not in substance vary from the offer. The only question is whether it is clear, positive and unambiguous.

Language is inherently susceptible to misunderstanding. Ambiguity abounds. For that reason the early common law required particular incantations to make an offer and formulaic expressions to accept. There is virtue in such an approach. However, the modern rule is otherwise. (See Rest.2d, Contracts, § 2, coms. a & b, p. 9.) Indeed, the trend, as exemplified by the Uniform Commercial Code, is toward even greater liberality in the construction of purported offers and acceptances.[1] Whatever the merit of bright line formulations, the law reflects a preference for case-by-case determinations. Contract formation is not a matter of form but substance; there are no magic words and no magic forms essential to the creation of binding agreement.

Except for their use of a standard form agreement, the parties herein engaged in a classic offer and acceptance transaction. Stripped of the captions, boxes and other adornments, and subject to certain terms and conditions not relevant here, the writing at the heart of this dispute sets forth an offer to sell a 23.8-acre parcel for $44,000 with escrow to close within 30 days. Appellant expressed in writing a willingness to buy the parcel, reaffirming two critical terms: the purchase price ("Price to be $44,000 as above") and the date of closing ("escrow to close on or before December 6, 1995").

Relying on *Krasley* v. *Superior Court, supra,* 101 Cal.App.3d 425, a case whose facts are similar to our own, the majority concludes that despite the fact appellant's acceptance merely reiterated the terms of the offer, it was ineffective. As in *Krasley,* appellant's fate was sealed when he elected to convey his acceptance with words written in a box captioned "COUNTER TO COUNTER OFFER." Under the *Krasley* rationale, appellant would be in no better position had he written: "I hereby accept your offer unequivocally and without conditions." To borrow a phrase from *Krasley,* "credulity is strained" by such a result. (*Id.* at p. 430.) The majority in our case wisely avoids such extreme formalism. However, their moderate formalism is equally incredulous.

The majority concludes that by placing the language of acceptance in a preprinted block captioned "COUNTER TO COUNTER OFFER," appellant's purported acceptance did not express an intent to be bound but rather called for a response from defendant. The majority is simply wrong. The appellant's handwritten language merely reaffirms the offer. The only other language in the box is preprinted and also reaffirms the offer: "Buyer accepts

---

[1]See section 2-207 of the Uniform Commercial Code (and corresponding Cal. U. Com. Code, § 2207) which provides that between merchants an acceptance can be effective even though it sets forth additional or different terms from the offer.

all other terms and conditions in the above counter offer."[2] Had appellant's handwriting been intended as a true counter to respondent's counteroffer it is reasonable to expect that appellant would have filled in the blank space provided for insertion of an expiration date. That space remains blank. No response was required.

The majority finds wisdom in the real estate industry's adoption of standard forms. I agree. Parties who use standardized forms, the provisions of which have been subject to extended judicial scrutiny, are assured some measure of certainty in their transactions. The use of such forms should be encouraged. The Legislature may wish to prescribe a standard form real estate contract and require adherence to the language and boxes contained therein. Indeed, respondent could have specified in the offer that only a signature on the dotted line set aside for that purpose would constitute an effective acceptance. (See Civ. Code, § 1582.)

However, petitioner was not constrained by statute or the terms of the offer to a particular form of acceptance. Notwithstanding the absence of constraints, the trial court and the majority would treat the forms as sacrosanct and penalize those with the temerity to depart from the boxes provided. As the trial court bemoans, despite the convenience of standardized forms, "people still manage to create problems." Perhaps so. Nonetheless, our task is to ascertain their intentions from their language and conduct. The language and actions of the appellant clearly reflect an intent to accept respondent's offer; no other construction is plausible. For that reason, I dissent.

A petition for a rehearing was denied November 23, 1998, and appellant's petition for review by the Supreme Court was denied February 3, 1999.

---

[2]Williston's observation is instructive: "Occasionally an offeree, out of ignorance or an abundance of caution, will insert a condition in his acceptance which merely expresses what would otherwise be implied in fact or in law from the offer. Because such a condition involves no qualification of the offeree's assent to the terms of the offer, it is not in truth a conditional acceptance, and it does not preclude the formation of a contract." (2 Williston, Law of Contracts (4th ed. 1991) § 6:15, p. 122, fn. omitted.)

## APPENDIX A

FROM : NELSON PLASTICS          PHONE NO. : 415 621 -551

NOV 01 '95 11:59 STEMBER REALTY     **COUNTER OFFER**
THIS IS INTENDED TO BE A LEGALLY BINDING AGREEMENT - READ IT CAREFULLY.
CALIFORNIA ASSOCIATION OF REALTORS® (CAR) STANDARD FORM

This is a counter offer to the: ☒ Real Estate Purchase Contract and Receipt for Deposit, ☐ Mobile Home Purchase Contract and Receipt of Deposit, ☐
Purchase Contract and Receipt for Deposit, ☐ Other _____ dated Oct 25
on property known as 23.5 Acres, MIL  APN 152-05-09
in which JOHN ROTH or Assigns (ROHI PARTNERS) is referred to as
and GEORGE NELSON is referred to as

### A1. CHANGES/AMENDMENTS:

A. THE PURCHASE PRICE SHALL BE $ 44,000.

_____

Seller accepts all other terms and conditions in the above designated agreement.

**A2. RIGHT TO ACCEPT OTHER OFFERS:** Seller reserves the right to continue to offer the Property for sale and to accept any other acceptable offer at any time prior to Buyer's acceptance and communication of acceptance as described in paragraph A3.

**A3. EXPIRATION:** Unless this counter offer is accepted and a copy signed by Buyer is personally received by STEMBER REALTY, who is authorized to receive it for Seller, on or before Nov 8, 1995 at 5:00, it shall be deemed revoked and the deposit shall be returned to Buyer. Seller's acceptance of another offer prior to Buyer's acceptance and communication of acceptance to Seller shall revoke this counter offer. Communication of acceptance of this counter offer may be in person, by mail or by telephone, and may be received by Seller or other person designated in this paragraph.

This counter offer and any supplements, addendum, or modification relating hereto, including any photocopy or facsimile thereof, may be executed in two or more counterparts, all of which shall constitute one and the same writing.

Seller acknowledges receipt of a copy and authorizes Broker(s) to deliver a signed copy to Buyer.

Date 11-2-95     19___  SELLER George A. Nelson
Time 09:45     SELLER

**A4. ACCEPTANCE:** Buyer accepts the above counter offer and acknowledges receipt of a copy.
Date _____ 19___  BUYER _____
Time _____ BUYER _____

**A5. COMMUNICATION OF ACCEPTANCE:** Receipt of signed acceptance on _____ 19___ at _____ A.M./P.M. by Seller
or other person designated in paragraph A3 _____ is acknowledged.

### COUNTER TO COUNTER OFFER

**B1. CHANGES/AMENDMENTS:** Price to be 44,800.00 as above
escrow to close and before Dec 6, 1995
all cash

Buyer accepts all other terms and conditions in the above counter offer.

**B2. EXPIRATION:** Unless this counter to counter offer is accepted and a copy signed by Seller is personally received on _____ 19___ at _____, who is authorized to receive it for Buyer, on or before _____, 19___ at _____, it shall be deemed revoked and the deposit shall be returned to Buyer. Communication of acceptance of this counter to counter offer may be in person, or by facsimile, and personally received by Buyer or other person designated in this paragraph.
Date Nov 6, 1995     19___  BUYER _____
Time _____ BUYER Roth Partners

**B3. ACCEPTANCE:** Seller accepts Buyer's counter to counter offer and agrees to sell on the above terms and conditions and acknowledges receipt of a copy and authorizes Broker(s) to deliver a signed copy to Buyer.
Date _____ 19___  SELLER _____
Time _____ SELLER

**B4. COMMUNICATION OF ACCEPTANCE:** Receipt of signed acceptance on _____ 19___ at _____ A.M./P.M. by Buyer
or other person designated in paragraph _____ is acknowledged.