[Civ. No. 28398. First Dist., Div. Four. Dec. 22, 1971.]

LAZZARESCHI INVESTMENT COMPANY, Plaintiff and Appellant, v. SAN FRANCISCO FEDERAL SAVINGS AND LOAN ASSOCIATION et al., Defendants and Respondents.

## COUNSEL

John R. Forde, Jr., for Plaintiff and Appellant.

Stephen Z. Meyers, Sally Disco, Alan Goldhammer and Richard A. Grossman as Amici Curiae on behalf of Plaintiff and Appellant.

Charles D. Sooy and C. Darrell Sooy for Defendants and Respondents.

## OPINION

**DEVINE, P. J.**—Plaintiff appeals from a summary judgment. Plaintiff, by its complaint, seeks recovery of an allegedly illegal penalty and seeks punitive damages against defendants for assertedly exacting it. From declarations presented by the parties at the motion for summary judgment, we have the following narration of facts.

On February 21, 1967, Frank A. Marshall borrowed $300,000 from defendant San Francisco Federal Savings and Loan Association, for which he executed a promissory note secured by a deed of trust on property used for commercial purposes. The second defendant is the trustee. In the note Marshall reserved the right to prepay in whole or in part at any time prior to maturity the $300,000 obligation. This privilege, however, was subject to a prepayment fee provision which provided for the following: "Privilege is reserved to make additional payments on the principal of this indebtedness at any time without penalty, except that as to any such payments made which exceed twenty percentum (20%) of the original principal amount of this loan during any successive twelve (12) month period beginning with the date of this promissory note, the undersigned agree to pay, as consideration for the acceptance of such prepayment, six (6) months advance interest on that part of the aggregate amount of all prepayments in excess of such twenty percentum (20%). The privilege of paying amounts not in excess of said twenty percentum (20%) of the original principal sum without consideration shall be noncumulative, if not exercised. The undersigned agree that such six (6) months advance interest shall be due and payable whether said prepayment is voluntary or involuntary, including any prepayment effected by the exercise of any acceleration clause provided for herein."

On November 17, 1967, plaintiff purchased the real property securing San Francisco Federal's loan from a court-appointed receiver, in the Contra Costa County divorce proceedings of Frank A. Marshall. The purchase price was $570,000. In order to consummate the purchase, plaintiff had to procure new financing. Immediately before the close of escrow, San Fran-

cisco Federal submitted a demand in the sum of $9,130.02, which constituted the prepayment fee computed in accordance with the provisions of the note. This sum was in addition to the price and other payments, including accrued interest, which plaintiff had agreed to pay for the real property. Plaintiff paid and defendants received the amount demanded, but plaintiff noted in the buyer's instructions that it did so under protest.

In his declaration, Mr. Lazzareschi, president of plaintiff corporation, avers that it was necessary for him to pay the money in order to close the escrow, "otherwise said judicial sale would have failed." Plaintiff also declares that the interest rate of defendants' loan was then 7¾ percent, substantially less than that which defendants could obtain by a new loan of the recovered funds; wherefore defendants actually profited from the early prepayment rather than being prejudiced thereby. On the basis of these circumstances, plaintiff alleges in its complaint that the amount of the prepayment charge bears no reasonable relationship to any damage allegedly sustained by the defendants by virtue of the prepayment. Plaintiff also alleges that the prepayment fee constitutes an unreasonable restraint on alienation.

### Standing of Plaintiff to Sue

Respondents contend that the obligation to pay the amount required as a condition for prepayment of the loan was that of the maker of the note, Frank A. Marshall, and that plaintiff need not have made this payment but could simply have declined to go ahead with its purchase when demand for payment of the sum was made. But for purposes of reviewing the summary judgment, we regard plaintiff as a legitimate subrogee. According to the declaration which was made by Mr. Lazzareschi, the demand was made at the last minute before the closing of the escrow, plaintiff had been obliged to procure new and additional financing, defendants knew that the mere interjection of the demand would suspend the close of the escrow, and an adjudication by a court as to the duty to make the payment would take such time that the sale could not have been concluded. The sale was involuntary as to Marshall, wherefore he may have been indifferent to the success of the sale.

Under these circumstances, subrogation is suitable. Where equitable considerations make subrogation proper, it is immaterial that the contract which is the subject of the lawsuit was made by defendant with a third party (see *Meyer Koulish Co. v. Cannon,* 213 Cal.App.2d 419, 424 [28 Cal.Rptr. 757]). The equitable doctrine of subrogation will be liberally applied to promote justice. (*Employers etc. Ins. Co. v. Pac. Indem. Co.,* 167 Cal.App.2d 369, 376 [334 P.2d 658].) "The doctrine of subrogation embraces all cases where, without it, complete justice cannot be done. Bot-

tomed on this premise, there is, it has been said, no limit to the circumstances that may arise in which the doctrine may be applied . . . .'" (*Estate of Kemmerrer*, 114 Cal.App.2d 810, 814 [251 P.2d 345, 35 A.L.R.2d 1393].)

If plaintiff had withdrawn when it first was confronted with the demand, it might have suffered loss of expenses theretofore incurred (this at least is inferable from the Lazzareschi declaration, and inferences are to be drawn liberally in favor of the party who opposes a motion for summary judgment). Besides, it is inferable that a desirable result in a judicial proceeding would have been aborted, that is, the obtaining of funds for the payment of Mr. Marshall's past due debts to his wife. Although some of the inferences which we have referred to might not be drawn by a judge in a full-fledged trial, they are relevant for present purposes. Plaintiff presently has standing in the lawsuit and in this appeal. On the other hand, plaintiff has no better rights than those of its subrogor, and in considering the merits of the appeal, we must regard the contract as that of Frank A. Marshall.

### The Subject of Penalty

Appellant cites *Freedman* v. *The Rector*, 37 Cal.2d 16 [230 P.2d 629], for the principle that damages imposed must bear a reasonable relationship to the injury caused. But the *Freedman* case and all of those which have been based on it are concerned with breach of a contract in some manner. In the instant case, there has been no breach. The borrower had the option, clearly spelled out in the promissory note, of making one or more prepayments. He, by the action of the receiver, availed himself of the option. This is not a situation of liquidated damages. Although the word "penalty" is used, and perhaps properly so in that a charge is made which is equivalent to unearned interest, there is no penalty in the sense of retribution for breach of an agreement, nor is there provision for liquidated damages because of ascertaining what the damages for such breach may be. Nor is the case one in which there is forfeiture for a default which, under appropriate circumstances, may be relieved under Civil Code section 3275, as in *Barkis* v. *Scott*, 34 Cal.2d 116 [208 P.2d 467], *Baffa* v. *Johnson*, 35 Cal.2d 36 [216 P.2d 13], and *Holiday Inns of America* v. *Knight*, 70 Cal.2d 327 [74 Cal.Rptr. 722, 450 P.2d 42]. Indeed, in the case before us there is the opposite of default, that is, a payment made before the promissor was obligated to make it.

Prepayment charges have been upheld against accusations of usury in *French* v. *Mortgage Guarantee Co.*, 16 Cal.2d 26 [104 P.2d 655, 130 A.L.R. 67]; *Grall* v. *San Diego Bldg. & Loan Assn.*, 127 Cal.App. 250 [15 P.2d 797]; and *McCarty* v. *Mellinkoff*, 118 Cal.App. 11 [4 P.2d 595]. But

the usury laws do not now apply to building and loan associations (Cal. Const., art. XX, § 22), so that attack on prepayment charges as usurious is not possible.

There are indications that an extortionate charge for prepayment would not be supported in judicial proceedings and that on one theory or another, yet undetermined, a person forced to sustain such a charge might have a remedy. Suggestions to this effect are found in a student note, *Secured Real Estate Loan Prepayment and the Prepayment Penalty,* 51 California Law Review 923-938; California Real Estate Secured Transactions (Cont.Ed. Bar) sections 4.69-4.78, pages 193-202. There is dictum to this effect in *Hellbaum* v. *Lytton Sav. & Loan Assn.,* 274 Cal.App.2d 456 [79 Cal.Rptr. 9]. In *Hellbaum,* there was sustained a demand for assumption of the debt by buyers, where the original borrower had agreed that the whole debt would become due on sale. A profitable sale, it was alleged (this was a dismissal case), had failed because of the lender's demand. The dictum referred to follows a statement that the complaint contains no allegation that the fees proposed to be exacted had no reasonable relation to the justifiable interests of the lender, and is put thus: "Perhaps a fact question could have been presented as to whether in effect the restraint was unreasonable (see Civ. Code, § 711)." The Continuing Education of the Bar treatise, section 4.72, page 196, comments on the *Hellbaum* dictum: "However, it is entirely possible that a court, examining a prepayment charge so exorbitant as to shock the judicial conscience and entirely incompatible with customs of the trade, will reject the freedom of contract analysis and declare it an invalid penalty."

For the purpose of this appeal, we shall assume that palpably exorbitant charges would be subject to defeat by judicial decision. We proceed to examine the contract, the promissory note, in the present case. It is necessary, however, to examine it not as an isolated transaction, but as a transaction existing with a multitude of others which the lender must enter in order to stay in business. The case is not like that of *Freedman* v. *The Rector, supra,* or of *Freedman's* progeny. These are distinguishable not only because they involve defaults, as said above, but also because in ascertaining whether the nondefaulting party had really suffered loss and if so, how much, consideration need be given only to the circumstances of the particular sale or lease or other bargained for transaction and, perhaps, occasionally to contemporary economic patterns. But we are dealing with a 20-year loan. The lender cannot recall the funds in the absence of default or sale of the property (the due-on-sale clause is valid: *Coast Bank* v. *Minderhout,* 61 Cal.2d 311 [38 Cal.Rptr. 505, 392 P.2d 265]). If interest rates increase sharply, the lender has no option to renegotiate the loan. Of course, if a prepayment is made at the borrower's choice (sometimes made

for him as in this receiver's case, but chargeable to him) when interest rates have increased, the lender may gain from the repayment. But in the whole portfolio there may be many loans which will not be repaid although some of the borrowers have become well able to repay. The borrowers can use the money more advantageously. On the other hand, if interest rates decline, borrowers will be able to refinance at lower rates, and if there were not adequate charge for repayment, they could discharge the note, giving the original lender funds which could be put out only at a lower rate. In *Cherry v. Home Sav. & Loan Assn.*, 276 Cal.App.2d 574, 579 [81 Cal.Rptr. 135], this fact of economic life was recognized in a due-on-sale case. Thus, unlike the *Freedman* type of case, the loan situation calls for attention to economic forces over a period which may be long—here, 20 years.

But even prescinding from the variables which are built into a loan which may run for as long as 20 years, we observe that there would be difficulty in deciding upon the advantage, if any, to the lender by early repayment. There is, of course, the matter of expense in all of the activities which lead to the decision to make the loan on a particular basis. Moreover, there is the matter of possible loss of time between repayment of the funds and placing them on loan anew. It would be impossible to trace the exact funds from one loan to another. The repaid monies surely would be used, but until the expiration of such time as would ordinarily be necessary to complete the new loan or loans (not identifiable), the funds, as part of the loanable resources of the lending institution, must remain in competition, as it were, with other resources of the lender and with the resources of similar institutions, awaiting settlement upon an acceptable borrower.

Here again, we do not foreclose inquiry into possible exorbitancy, but merely point out that a prepayment case does not fall into a simple calculation at any one point of time of the difference between the interest rate on the repaid loan and that which might be available to the lending institution on a new loan of about the same size made to a new borrower.

The best available comparison is between the loan under consideration and the regulation adopted by the Federal Home Loan Bank Board, which reads: ". . . The prepayment penalty for a loan secured by a home which is occupied or to be occupied in whole or in part by a borrower shall not be more than 6 months' advance interest on that part of the aggregate amount of all prepayments made on such loan in any 12-month period which exceeds 20 percent of the original principal amount of the loan." (12 C.F.R., § 545 6-12.) Regulations of the agency are authorized by act of Congress (12 U.S.C.A. 1464(d)(1)). The regulation applies to homes and not to commercial property such as is the subject in this case. But there is more reason to limit charges in home loans than in large commercial

loans. The former have to do with a necessity of life, they are taken by people usually of less affluence than that of investors, and by people who have less opportunity to negotiate for the most favorable terms. (See 51 Cal.L.Rev. 938.) The terms for prepayment in the subject commercial loan are exactly those which are expressly permitted for home loans by the federal regulation. Wherefore, although the federal regulations do not preempt the field of control of repayments, they do show acceptance by a federal agency, which must be informed in such matters, of a provision similar to that existing in the subject loan, even when applied to the borrower more favored by the law, the purchaser of a home.

We observe that the author of the student note referred to above states that the penalty terms in prepayment option agreements are often moderate, and in support of this statement says: "A typical penalty clause calls for six months' unearned interest on prepayments exceeding 20% of the original principal in any calendar year." (51 Cal.L.Rev. 925, fn. 14.) These are the exact terms of the subject promissory note.

We do not find the terms of the loan to be shocking to the judicial conscience. In this state there is no usury law applying to building and loan associations, and there is no statute forbidding or regulating prepayment charges. The borrower who signs such a note as the subject one and who becomes possessed of sufficient funds to make substantial payments above the periodic ones which he is required to make, may pay the whole note without any penalty in not more than five years. This is because of the deduction of 20 percent per year from the original principal, as described above. But if the borrower, as in this case, obtains funds with which to pay the entire amount, the rate of interest is not a shocking one. In this case, the charge of $9,130.02 was 3.0403 percent of the original loan of $300,-000. It was 3.0883 percent of the unpaid principal of $295,626.05. (Six months' interest on the unpaid principal would have been a higher amount than $9,130.02 because of the provision in the note that 20 percent of the original loan, that is, $60,000, shall be deducted for computing the prepayment charge.) In the absence of any statute or authorized regulation, and in the absence of any evidence produced by declaration of plaintiff in opposition to the motion for summary judgment or suggested by plaintiff as appellant in its briefs, we know of no means by which a court could come to the conclusion that the charge which appellant agreed to pay was exorbitant or out of line with that customarily provided in loan agreements. Indeed, plaintiff does not in its complaint or in its declaration in opposition to the motion for summary judgment, make the point that the charge exceeds that which is usual. Plaintiff's theory of excessiveness is that the charge bears no reasonable relationship to any damage sustained by virtue

of the prepayment because of respondents' ability to lend the funds anew at a higher rate, a subject discussed above.

### The Subject of Restraint on Alienation

Plaintiff contends that because the loan was secured by a deed of trust which could not be lifted without satisfying the promissory note, it partakes of the nature of a restraint on alienation in violation of section 711 of the Civil Code. But it has been held that reasonable restraints made in protection of justifiable interests of the parties are sustainable. (*Coast Bank* v. *Minderhout,* 61 Cal.2d 311, 316-317 [38 Cal.Rptr. 505, 392 P.2d 265].) The *Coast Bank* case involved a due-on-sale provision, but it was pointed out in the opinion that several other kinds of restraints on alienation are recognized as lawful. The prepayment charge by no means constitutes an absolute restraint and because we do not regard it as an exorbitant burden, as pointed out above, and because there are legitimate interests of the lender to be protected, as also discussed, we do not discern an unlawful restraint on alienation.

### Conclusion

Finally, we remark that the control of charges, if it be desirable, is better accomplished by statute or by regulation authorized by statute than by *ad hoc* decisions of the courts. Legislative committees and an administrative officer charged with regulating an industry have better sources of gathering information and assessing its value than do courts in isolated cases. Besides, institutions which lend vast sums of money should be informed, not by judgments after the facts on a case-to-case basis, but by laws or regulations which are in existence in advance of the undertaking to execute loans, of the validity or invalidity of terms that are commonly used. Otherwise, the lending institutions themselves may be the object of lawsuits in which a penalty is demanded, as in the third cause of action in the present case in which plaintiff seeks punitive damages.

The judgment is affirmed.

Rattigan, J., and Bray, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 16, 1972. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.