Opinion
 

 FOGEL, J.
 
 *
 

 Plaintiff appeals from a judgment for defendants in an action for declaratory relief under Code of Civil Procedure section 1060. The trial court found that pursuant to Civil Code section 1654, a typewritten provision prohibiting prepayment of an all-inclusive promissory note was superseded by a printed provision limiting the borrower’s right of prepayment to the extent to which prepayment was permitted on an underlying note. As an alternative basis for its ruling, the trial court found that the typewritten provision, if enforced, would constitute an unreasonable restraint on alienation in violation of Civil Code section 711. We conclude that neither finding is supported by the record and reverse.
 

 Background
 

 Defendants R. Bruce Switzer and Jean Switzer agreed to purchase a commercial building and land from plaintiff Gutzi Associates (Gutzi) for $367,000. In May 1981, the parties signed a standard form purchase agreement. The Switzers agreed to make a $100,000 cash down payment and to execute a promissory note in the amount of $267,000, secured by a deed of trust against the property.
 

 The following month, the parties executed a standard form all-inclusive promissory note (the Gutzi/Switzer note) and an all-inclusive deed of trust. Bearing interest at 14 percent per annum, the Gutzi/Switzer note provided for monthly principal and interest payments from July 1, 1981, until July 1, 2004. It also provided for three principal reduction payments of $15,000 each, due at the beginning of July and December 1982 and September 1983.
 

 The Gutzi/Switzer note “wrapped” an underlying promissory note payable to Safeco Life Insurance Company (the Safeco note). The Safeco note, in the face amount of $188,000 and bearing interest at
 
 9¾
 
 percent per annum, was also secured by a deed of trust against the property. It provided
 
 *1630
 
 for monthly principal and interest payments from August 1, 1979, until July 1, 2004.
 

 Beginning with the sale in 1981, the Switzers made payments to Gutzi in compliance with the Gutzi/Switzer note. Six years later, in June 1987, Bruce Switzer informed Gutzi by letter that the Switzers had prepaid the Safeco note in full. The Switzers asserted that the principal balance on the Gutzi/Switzer note was now $43,505.62. Enclosed with the letter was an amortization schedule providing for payments over the next year and a half, at the end of which the Gutzi/Switzer note would, purportedly, be paid in full.
 

 The Safeco note prohibited prepayment of principal during the first five years of the term. The note expressly allowed prepayment after Sie fifth year, subject to payment of additional consideration.
 

 The parties’ May 1981 purchase agreement contained a typewritten provision which stated as follows: “There shall be no prepayment option during the term of the loan, other than the three principal reductions agreed upon above.” A similar “lock-in” provision was typed on the first page of the Gutzi/Switzer note: “There shall be no prepayment option during the term of this loan, other than the three principal reductions referenced in Exhibit ‘A’ attached hereto.”
 

 The printed portion of the Gutzi/Switzer note provided: “Notwithstanding anything to the contrary herein contained, the right of Maker [Switzers] to prepay all or any portion of the principal of this Note is limited to the same extent as any limitation exists in the right to prepay the principal of the Underlying Note(s). If any prepayments of principal of this Note shall, by reason of the application of any portion thereof by Payee [Gutzi] to the prepayment of principal of the Underlying Note(s), constitute such prepayment for which the holders of the Underlying Note(s) are entitled to receive a prepayment penalty or consideration, the amount of such prepayment penalty or consideration shall be paid by Maker [Switzers] to Payee [Gutzi] upon demand, and any such amount shall not reduce the unpaid balance or interest hereunder.”
 

 In his complaint for declaratory relief, Gutzi alleged that the Switzers had not assumed liability for direct payment of the Safeco note and sought a declaration that the Switzers were precluded from prepayment of either the Gutzi/Switzer note or the Safeco note, except for the three principal reduction payments specified in the Gutzi/Switzer note. Agreeing that there were no factual issues in dispute, the parties submitted the case to the trial court
 
 *1631
 
 on the pleadings, briefs and oral argument. The trial court entered judgment in favor of the Switzers as set forth above, and Gutzi appealed.
 

 Discussion
 

 Our review is de novo. “[W]here, as here, the trial court’s interpretation of the agreement did not turn on the credibility of extrinsic evidence and did not require a resolution of a conflict in that evidence, we are not bound by the result below and must make our own independent determination. [Citation.]”
 
 (Gerdlund
 
 v.
 
 Electronic Dispensers International
 
 (1987) 190 Cal.App.3d 263, 270 [235 Cal.Rptr. 279].)
 

 The Parties' Agreement
 

 The trial court concluded that the Gutzi/Switzer note was ambiguous regarding the Switzers’ right to prepay, with the typed text forbidding it and the printed text allowing it. In order to resolve the perceived ambiguity, the court relied upon Civil Code section 1654: “In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist.” Because the court inferred that the Gutzi/Switzer note was prepared by the title company at the behest of Gutzi, the court construed the note in favor of the Switzers. Relying on the printed text, the court declared that the Switzers had the same right to prepay the Safeco note as was enjoyed by the maker of that note, regardless of whether the Switzers expressly assumed liability on the Safeco note.
 
 [1]
 
 The court concluded: “Since the right to prepay the Safeco note matured in May, 1984, [the Switzers’] offer to prepay and to complete prepayment of [the Switzers’] all-inclusive notes on or about January, 1989, must be accepted.”
 

 However, the trial court erred in resorting to section 1654 because, as required by that statute, this case may be resolved through application of “the preceding rules.” (See
 
 Decter
 
 v.
 
 Stevenson Properties, Inc.
 
 (1952) 39 Cal.2d 407, 418 [247 P.2d 11];
 
 B. L. Metcalf General Contractor, Inc.
 
 v.
 
 Earl Erne, Inc.
 
 (1963) 212 Cal.App.2d 689, 695-696 [28 Cal.Rptr. 382] [“The purpose of [section 1654] is to authorize the court,
 
 when other rules of construction are not determinative,
 
 to indulge in that construction which
 
 *1632
 
 would be most favorable to the party who did not prepare the contract. [Italics added.]”].)
 
 [2]
 

 Civil Code section 1641, requires that a contract be read as a whole; Civil Code section 1652 requires that a repugnancy “be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clauses, subordinate to the general intent and purpose of the whole contract.” As required by these statutes, the typed and printed provisions of the Gutzi/Switzer note can be reconciled. The typed provision clearly states that prepayment, other than the three principal reductions, is forbidden. Although the printed provision regarding prepayment is not a model of clarity, it may also be construed to limit, rather than license, prepayment. Thus, the printed provision states that (1)
 
 if
 
 prepayment of the Gutzi/Switzer note is
 
 otherwise
 
 allowed, the privilege shall be subject to any limitations governing prepayment of the underlying Safeco note, and (2) if, as a result of such prepayment, the payee of the underlying Safeco note is entitled to receive a prepayment penalty, then the maker of the Gutzi/Switzer note will pay the additional sum. Admittedly, the effect of this interpretation is to vitiate the printed provision, since prepayment is not otherwise allowed, but this is still a more harmonious reading of the contract than one which holds that the two provisions are in direct conflict.
 
 [3]
 

 Ultimately, however, it is not necessary to engage in contorted construction, because this case has a far more simple resolution. Civil Code section 1651, provides that “[w]here a contract is partly written and partly printed, . . . the written parts control the printed parts .... And if the two are absolutely repugnant, the latter must be so far disregarded.” The word “written” in the statute includes typewritten. (See
 
 Continental Cas. Co.
 
 v.
 
 Phoenix Constr. Co.
 
 (1956) 46 Cal.2d 423, 431 [296 P.2d 801, 57 A.L.R.2d 914];
 
 Knox
 
 v.
 
 Wolfe
 
 (1946) 73 Cal.App.2d 494, 499 [167 P.2d 3].) Thus, the typewritten provision in the Gutzi/Switzer note, which unequivocally prohibits prepayment, is paramount to the printed
 
 *1633
 
 provision regarding prepayment. Either the printed provision must be read in harmony with the typed provision or, by statutory mandate, the printed provision must be disregarded.
 

 Restraint on Alienation
 

 The trial court held, alternatively and sua sponte, that the lock-in provision typed into the Gutzi/Switzer note was an unreasonable restraint on alienation, in violation of Civil Code section 711.
 
 [4]
 
 The court analogized this case to
 
 Wellenkamp
 
 v.
 
 Bank of America
 
 (1978) 21 Cal.3d 943, 953 [148 Cal.Rptr. 379, 582 P.2d 970], in which the Supreme Court held that, under section 711, an institutional lender cannot enforce a due-on-sale clause in a promissory note or deed of trust upon the occurrence of an outright sale unless the lender can demonstrate that enforcement is reasonably necessary to prevent impairment of the security or risk of default.
 
 [5]
 

 Relying upon a passage from California Real Property Financing,
 
 op. cit. supra,
 
 at page 118, the trial court reasoned: “[F]rom the borrower’s perspective, such a [lock-in] provision has a broader impact if the loan is substantially paid down, as in the instant case, or the security property substantially appreciated, or both, during the period that the borrower has no right to prepay because the lender will maintain the first lien of its deed of trust. Should the borrower wish to sell the encumbered property, the new buyer has no effective way to borrow a significant portion of the purchase price on a conventional basis, since the new buyer cannot offer the new lender the security of a first lien on the property. [^]] Unless the new buyer is able to secure a wrap-around loan or other type of second deed of trust financing, often at substantially higher interest rates,
 
 no sale will occur. Transfer of the property is prohibited entirely.
 
 Similarly, if the borrower needs additional capital, the borrower has a very large equity on which he cannot economically borrow.”
 

 
 *1634
 
 Early California cases firmly established that a lender may refuse to accept payment of a debt before the debt is due. (See
 
 Smiddy
 
 v.
 
 Grafton
 
 (1912) 163 Cal. 16 [124 P. 433];
 
 Rhorer
 
 v.
 
 Bila
 
 (1890) 83 Cal. 51 [23 P. 274].) In the absence of statutory or contractual permission, “a debtor has no more right to pay off the obligation prior to its maturity date than he does to pay it off after its maturity date.”
 
 (Williams
 
 v.
 
 Fassler
 
 (1980) 110 Cal.App.3d 7, 10 [167 Cal.Rptr. 545].) Therefore, a lender who is willing to accept early payment may extract additional consideration from the borrower in exchange for the privilege of prepayment. (See
 
 Furesz
 
 v.
 
 Garcia
 
 (1981) 120 Cal.App.3d 793 [174 Cal.Rptr. 803];
 
 Abbot
 
 v.
 
 Stevens (1955)
 
 133 Cal.App.2d 242 [284 P.2d 159];
 
 McCarty
 
 v.
 
 Mellinkoff
 
 (1931) 118 Cal.App. 11 [4 P.2d 595].) California courts have upheld prepayment fees against challenges that they were usurious
 
 (French
 
 v.
 
 Mortgage Guarantee Co.
 
 (1940) 16 Cal.2d 26, 31 [104 P.2d 655, 130 A.L.R. 67];
 
 Grall
 
 v.
 
 San Diego Bldg. & Loan Assn.
 
 (1932) 127 Cal.App. 250, 255 [15 P.2d 797]), and that they constituted unlawful liquidated damages
 
 (Meyers
 
 v.
 
 Home Sav. & Loan Assn.
 
 (1974) 38 Cal.App.3d 544, 546-547 [113 Cal.Rptr.
 
 358], Hellbaum
 
 v.
 
 Lytton Sav. & Loan Assn.
 
 (1969) 274 Cal.App.2d 456, 459 [79 Cal.Rptr. 9]).
 

 California courts have also upheld prepayment fees challenged as unreasonable restraints on alienation in violation of Civil Code section 711.
 
 (Sacramento Sav. & Loan Assn.
 
 v.
 
 Superior Court
 
 (1982) 137 Cal.App.3d 142 [186 Cal.Rptr. 823];
 
 Lazzareschi Inv. Co.
 
 v.
 
 San Francisco Fed. Sav. & Loan Assn.
 
 (1971) 22 Cal.App.3d 303 [99 Cal.Rptr. 417];
 
 Hellbaum
 
 v.
 
 Lytton Sav. & Loan Assn., supra,
 
 274 Cal.App.2d 456.) However, the present case raises a somewhat different issue. There is no question here as to the reasonableness of a prepayment penalty. Rather, the issue is whether a lock-in provision entirely forbidding prepayment of an all-inclusive promissory note is an unreasonable restraint on alienation.
 

 Civil Code section 711 provides: “Conditions restraining alienation, when repugnant to the interest created, are void.” Our Supreme Court has stressed that “this rule is not absolute in its application, but forbids only
 
 unreasonable
 
 restraints on alienation. [Citations.] Reasonableness is determined by comparing the justification for a particular restraint on alienation with the quantum of restraint actually imposed by it.”
 
 (Kendall
 
 v.
 
 Ernest Pestana, Inc.
 
 (1985) 40 Cal.3d 488, 498 [220 Cal.Rptr. 818, 709 P.2d 837].) Under this balancing test, “the greater the quantum of restraint that results from enforcement of a given clause, the greater must be the justification for that enforcement.”
 
 (Wellenkamp
 
 v.
 
 Bank of America, supra,
 
 21 Cal.3d 943, 949.)
 

 The highest courts of Oregon and Washington both have held that a lock-in provision is not an unreasonable restraint on alienation. In
 
 *1635
 

 Hartford Life Ins. Co.
 
 v.
 
 Randall
 
 (1978) 283 Ore. 297 [583 P.2d 1126], a promissory note allowed partial prepayment during the first 10 years of the term but prohibited complete prepayment until after 10 years. The court concluded that the bargained-for lock-in was “a trade off of commercially beneficial interests which defendants knowingly made when they borrowed the money.”
 
 (Id.
 
 at p. 1127.) Just as the Switzers may be, the borrowers in
 
 Hartford Life Ins. Co.
 
 were ill-positioned to sell or refinance. The court was still unpersuaded: “There is an expense attached to loaning money on real property, and it is an entirely legitimate aim of purveyors of credit to loan it for a length of time and at a rate of interest which guarantee a certain net return on the management of the money. This appears to us to be no less valuable an interest than that of defendants’ in making liquid their equity for the purpose of using it elsewhere.”
 
 (Id.
 
 at p. 1127.)
 

 The 15-year note in
 
 McCausland
 
 v.
 
 Bankers Life Ins. Co.
 
 (1988) 110 Wn.2d 716 [757 P.2d 941] (in bank), prohibited prepayment during the first seven years of the term, but permitted it thereafter. When the borrowers sought to repay the $700,000 loan after two years, the lender agreed conditioned upon their payment of an additional $115,000. In their declaratory relief action, the borrowers argued that the prepayment prohibition was overly restrictive. The court disagreed and did “not deem it appropriate to forbid prepayment restrictions on public policy grounds in order to protect commercial borrowers who, in most cases, are well able to bargain on their own with lenders who have a potential economic advantage.”
 
 (Id.
 
 at p. 945.) “The commercial borrowers in this case were on notice that they were restricted from retiring their loan prior to maturity unless they could reach an understanding with the lender on the matter. There is no allegation of fraud or overreaching in this case and the provisions in question were clearly set forth in both the loan papers and the commitment letter signed by borrowers.”
 
 (Id.
 
 at p. 946.)
 

 We agree with the reasoning of the Oregon and Washington courts. In the instant case, the prepayment prohibition was clearly set forth both in the purchase agreement and in the Gutzi/Switzer note. It was part of the bargained-for exchange between the parties in an arms’ length commercial transaction. It was likely a pivotal factor in Gutzi’s assent to the other terms of the agreement and, in view of the longstanding common law rule and the scant record before us, we are unable to find the provision unreasonable.
 

 We do not hold, however, that a prohibition on prepayment may never constitute an unreasonable restraint on alienation. Within the factual setting of a particular case, such a provision might violate section 711. (Cf.
 
 Lazzareschi Inv. Co.
 
 v.
 
 San Francisco Fed. Sav. & Loan Assn., supra,
 
 22 Cal.App.3d at p. 308 [discussing “indications that an extortionate charge
 
 *1636
 
 for prepayment would not be supported injudicial proceedings . . . but see
 
 Williams
 
 v.
 
 Fassler, supra,
 
 110 Cal.App.3d at p. 12 [A prepayment charge would be invalidated only if it were “ ‘so exorbitant as to shock the judicial conscience.’ ”].)
 

 Here, the trial court acknowledged that California law has long allowed a lender to prohibit prepayment but concluded that, in the factual context of this case, prohibition of prepayment was an unreasonable restraint. But the record does not bontain sufficient facts to support the court’s conclusion. The court made assumptions about the impact of the prepayment prohibition upon the Switzers, based upon general financial principles but without specific evidentiary support. (See
 
 La Sala
 
 v.
 
 American Sav. & Loan Assn.
 
 (1971) 5 Cal.3d 864, 882 [97 Cal.Rptr. 849, 489 P.2d 1113] “[‘[W]e cannot rule upon the validity of a . . . clause in the abstract. . . . [i]t is not so much that clause itself as the . . . application of it that will effect an invalid restraint on the alienation of property.’]”;
 
 Superior Motels, Inc.
 
 v.
 
 Rinn Motor Hotels, Inc.
 
 (1987) 195 Cal.App.3d 1032, 1059 [241 Cal.Rptr. 487].)
 

 Assuming that the court may judge the reasonableness of the prepayment provision based on later events (contra
 
 Williams
 
 v.
 
 Fassler, supra,
 
 110 Cal.App.3d at p. 12 [“Reasonableness must be tested at the time the contract was formed and not by the benefit of hindsight.”]), here the court had no factual record from which to judge. There was no evidence that the Switzers had tried, but failed, to refinance or sell the property. Indeed, there was no evidence that the Switzers had even approached Gutzi in an attempt to reach an accommodation regarding prepayment. Instead, the record indicates that the Switzers simply dealt with Safeco directly, thus scoring an end run around Gutzi and presenting Gutzi with a fait accompli.
 

 Finally, we are also in agreement with the Washington court that if there is a need for regulation of prepayment provisions, that subject is better addressed by the Legislature than by the judiciary. (See
 
 McCausland
 
 v.
 
 Bankers Life Ins. Co., supra,
 
 757 P.2d at p. 945; cf.
 
 Lazzareschi Inv. Co.
 
 v.
 
 San Francisco Fed. Sav. & Loan Assn., supra,
 
 22 Cal.App.3d at p. 311 [“[T]he control of [prepayment] charges, if it be desirable, is better accomplished by statute . . . than by
 
 ad hoc
 
 decisions of the courts.”].)
 
 [6]
 

 
 *1637
 
 Disposition
 

 The judgment is reversed and this action is remanded to the trial court for further proceedings consistent with the views expressed herein. Appellant shall recover costs on appeal.
 

 Capaccioli, Acting P. J., and Cottle, J., concurred.
 

 *
 

 Assigned by the Chairperson of the Judicial Council.
 

 [1]
 

 Nowhere in the documents do the Switzers expressly assume liability for direct payment of the Safeco note. The Gutzi/Switzer note does allow them to make a monthly payment on the Safeco note directly to Safeco Life Insurance Company in the event that they are current in paying the Gutzi/Switzer note but the maker of the Safeco note is delinquent. This provision does not make the Switzers liable for payment of the Safeco note, however, and certainly does not grant the Switzers the right of prepayment.
 

 [2]
 

 A
 
 “preceding rule” that need not be applied in this case is Civil Code section 1636, providing that “[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.” Neither party to this action sought to introduce evidence of their intention. Most notably, the Switzers have not asserted that they believed at the time of contracting that they would have the right of prepayment.
 

 [3]
 

 In fact, another provision in the Gutzi/Switzer note is more difficult to reconcile with the prepayment prohibition. The note provides for “principal and interest payable in installments of
 
 See Exhibit ’a’ Attached Hereto and Made a Part Hereof
 
 or more on the 15th** day of each and every month . . . .” The phrase “or more” indicates that the Switzers may pay just the amount specified in exhibit A or they may opt to pay an additional amount—in other words, they may prepay. (See Cal. Real Property Financing (Cont.Ed.Bar 1988) p. 123; 4 Miller & Starr, Cal. Real Estate (2d ed. 1989) § 9:76, p. 223.) But, as discussed
 
 infra,
 
 the typed prepayment prohibition takes priority over the printed “or more.”
 

 [4]
 

 We have some concern that the parties were not given an opportunity in the trial court to address the restraint on alienation issue either orally or in writing. (See
 
 Spector
 
 v.
 
 Superior Court
 
 (1961) 55 Cal.2d 839, 843-844 [13 Cal.Rptr. 189, 361 P.2d 909].) During a hearing, however, the trial judge signaled his intention to address the issue in an amended memorandum of decision, indicating at the same time that his initial decision in favor of the Switzers, issued almost two months earlier, would not change. Presumably, counsel could have obtained time to address the restraint on alienation issue, but chose not to request it. In any event, the parties have had adequate opportunity to address the issue on this appeal.
 

 [5]
 

 Due-on-sale clauses in loans secured by real property are now generally enforceable under the Garn-St. Germain Depository Institutions Act of 1982, 12 United States Code section 1701j-3, which preempts state laws restricting the enforcement of such clauses. Although the effect of the holding in
 
 Wellenkamp
 
 was short-lived, the Supreme Court’s discussion of what constitutes an unreasonable restraint on alienation under section 711 may be useful.
 

 [6]
 

 Significantly, the California Legislature has limited the enforcement of prepayment penalties in contracts regarding residential real property of less than four units. (See Civ. Code, §§ 2954.9, subd. (b), 2985.6; Bus. & Prof. Code, § 10242.6.)