**ATLANTIC LIMITED PARTNERSHIP–XI, Plaintiff,**

v.

**JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Defendant.**

No.  99–CV–60277–AA.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 28, 2000.

Marilyn A. Peters, Kimberly A. Bickersteth, Dykema Gossett, Bloomfield Hills, MI, for Plaintiff.

Charles T. Harris, Ashley E. Lowe, Dickinson, Wright, Bloomfield Hills, MI, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

HACKETT, District Judge.

Before the court is an action involving the enforcement of a prepayment premium provision contained in a mortgage note drafted by defendant to ensure payment of its $26,753,447.47 loan to plaintiff. Plaintiff claims that the prepayment premium was unreasonable and unenforceable and that defendant breached the implied covenant of good faith and fair dealing. Both parties have filed motions for summary judgment.

### Facts

The facts of this case are not in dispute. On February 4, 1994, defendant loaned plaintiff $26,753,444.47. Plaintiff promised to repay defendant for the loan in accordance with the terms and conditions contained in the Amended and Restated Mortgage Note (Mortgage Note), which plaintiff executed on February 4, 1994. The Mortgage Note was for a term of five (5)-years, maturing March 1, 1999. The Mortgage Note contained a provision providing plaintiff with the right to prepay the indebtedness at any time during the term of the loan. In the event that plaintiff decided to prepay the loan prior to maturity, the terms contained in the Mortgage Note required plaintiff to compensate defendant pursuant to a formula designed to calculate the anticipated financial loss to defendant resulting from an unscheduled loan repayment (prepayment premium). The Mortgage Note provided:

The undersigned shall have the right to prepay the indebtedness evidenced by this Note, in full but not in part, upon giving to John Hancock Mutual Life In-

surance Company not less than thirty (30) nor more than ninety (90) days' prior written notice, and by paying the entire principal balance together with all interest and other costs or charges which have accrued hereunder or under any instrument securing this note to the date of prepayment, plus a prepayment premium (the "Prepayment Premium") equal to the greater of:

(a) the product obtained by multiplying (i) the difference obtained by subtracting from the interest rate on this note adjusted to its semi-annual equivalent rate (8.6519%) the yield rate on the United States Treasury Notes having the closest maturity date to the maturity date of this note as such yield rate is reported in the Wall Street Journal or similar publication on the fifth business day preceding the prepayment date, and (ii) the number of years and fraction thereof remaining between the prepayment date and the scheduled maturity date hereof, and (iii) the prepaid principal amount; or

(b) one percent (1%) of the prepaid principal amount.

In the event that no yield rate is obtainable on the above United States Treasury Notes, then the nearest equivalent issue shall be selected by John Hancock Mutual Life Insurance Company in its reasonable discretion. Partial prepayment of this note shall not be allowed. No prepayment premium will be required for prepayment made on or after November 1, 1998, so long as the undersigned has provided the notice of prepayment required above.

(Amended and Restated Mortgage Note, February 4, 1994, attached as Exhibit A to Plaintiff's Motion for Summary Judgment.)

On July 10, 1998, defendant received written notice of plaintiff's intent to prepay the loan. Plaintiff prepaid the loan to defendant on July 30, 1998.[1] The total payoff figure to defendant was $26,077,-083.03, which included a prepayment penalty of $503,114. Plaintiff objected to the amount and calculation of the prepayment premium. In addition, plaintiff made several proposals to resolve the dispute regarding the prepayment premium that were rejected by defendant. Plaintiff paid the principal and interest owing under the loan and the full prepayment premium claimed by defendant under the Mortgage Note. However, plaintiff's counsel advised defendant's counsel that the prepayment premium was being paid under protest. On April 28, 1999, plaintiff filed a complaint seeking declaratory relief and the return of the prepayment premium.

*Standard of Review*

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See F.D.I.C. v. Alexander*, 78 F.3d 1103, 1106 (6th Cir.1996). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Kutrom Corp. v. City of Center Line*, 979 F.2d 1171, 1174 (6th Cir.1992).

The standard for determining whether summary judgment is appropriate is " 'whether the evidence presents a suffi-

---

**1.** Interestingly, plaintiff failed to provide timely notice of its intent to prepay the loan as required under the Mortgage Note. Admittedly, plaintiff gave defendant less than thirty days *written* notice. However, defendant's counsel indicated in a letter to plaintiff's counsel that defendant was willing to waive compliance with the notice requirement contained in the Mortgage Note. (Letter, p. 2, attached as Exhibit E to Defendant's Brief in Support.)

cient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Winningham v. North Am. Resources Corp.,* 42 F.3d 981, 984 (6th Cir. 1994) (citing *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir.1989)). The evidence and all inferences therefrom must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Enertech Elec., Inc. v. Mahoning County Comm'r,* 85 F.3d 257, 259 (6th Cir.1996); *Wilson v. Stroh Co., Inc.,* 952 F.2d 942, 945 (6th Cir.1992). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Hartleip v. McNeilab, Inc.,* 83 F.3d 767, 774 (6th Cir.1996).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 270, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *see also Adams v. Philip Morris, Inc.,* 67 F.3d 580, 583 (6th Cir.1995). Mere allegations or denials in the non-movant's pleadings will not meet this burden. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Further, the non-moving party cannot rest on its pleadings to avoid summary judgment. It must support its claim with some probative evidence. *Kraft v. United States,* 991 F.2d 292, 296 (6th Cir.), *cert. denied,* 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993).

### Analysis

■ The main goal of contract interpretation is to honor the intent of the parties. *Conagra, Inc. v. Farmers State Bank,* 237 Mich.App. 109, 602 N.W.2d 390, 401 (1999) (citing *UAW–GM Human Resource Center v. KSL Recreation Corp.,* 228 Mich.App. 486, 491, 579 N.W.2d 411, 414 (1998)). "If the contract language is clear and unambiguous, then its meaning is a question of law for the court to decide." *Id.* Courts must enforce the terms of the contract as written and avoid the temptation to rewrite the clear and unambiguous contractual language under the guise of interpretation. *Upjohn Co. v. New Hampshire Ins. Co.,* 438 Mich. 197, 208 n. 8, 476 N.W.2d 392, 398 (1991). *See J. Brodie & Son, Inc. v. George A. Fuller Co.,* 16 Mich.App. 137, 141–42, 167 N.W.2d 886, 888 (1969).

■ With regard to prepayment clauses, there does not appear to be any case law in Michigan which specifically address such clauses. Therefore, the court will examine the issue of prepayment premiums based upon federal case law. As a general rule, "[r]easonable prepayment premiums are enforceable." *Eyde Brothers Development Co. v. The Equitable Life Assurance Society of the United States,* 697 F.Supp. 1431, 1436 (W.D.Mich. 1988), *aff'd,* 888 F.2d 127 (6th Cir.1989). In fact, the court in *Eyde v. Empire of America Federal Savings Bank,* 701 F.Supp. 126, 128–29 (E.D.Mich.1988) stated:

> There is no dispute that reasonable prepayment premiums are enforceable. They serve a valid purpose in compensating at least in part for the anticipated interest a lender will not receive if a loan is paid off prematurely. Among other things, a prepayment premium insures the lender against loss of his bargain if interest rates decline. It is well settled, however, a lender may lose its right to a premium when it elects to accelerate a debt.

> This is so because acceleration, by definition, advances the maturity date of the debt so the payment thereafter is not

made a prepayment but instead is payment after maturity. Several courts have held a lender cannot assess a prepayment penalty even when the lender accelerates the balance due because of the borrower's default.

*Id.* (citations omitted). In addition, the lender may not receive unearned interest or a prepayment premium on a mortgage obligation when the mortgage is satisfied by a government exercising its power of eminent domain or from destruction of the mortgaged property through an insured-against casualty such as fire. *See In Re LHD Realty Corp.*, 726 F.2d 327, 330–31 (7th Cir.1984).

Defendant argues that the terms of the Mortgage Note were clear and unambiguous and should be enforced. According to defendant, the prepayment premium outlined in the Mortgage Note is not susceptible to multiple meanings. The Mortgage Note provided for a formula to calculate the prepayment premium in the event that plaintiff elected to repay the loan prior to November 1, 1998. Plaintiff elected to repay the loan approximately seven (7) months prior to maturity, instead of waiting until November 1, 1998, the date after which the loan could be repaid without being subjected to the prepayment premium. Defendant asserts that the prepayment premium should not be analyzed as a liquidated damages clause, since the prepayment premium does not involve a breach of contract. "Rather, [the prepayment premium] represents an opportunity for the borrower to elect an alternative method of performance of its obligation to repay the debt." According to defendant, plaintiff was a sophisticated borrower, who simply wanted to take advantage of an opportunity to obtain more favorable financing. Defendant contends that plaintiff was not beset by unforeseeable circumstances which would render the prepayment premium unreasonably onerous.

Further, defendant argues that the prepayment premium was commercially reasonable. Defendant asserts that the prepayment premium was typical of provisions found in other commercial mortgage notes which existed at the time plaintiff executed the Mortgage Note. The prepayment premium paid by plaintiff was approximately 2% of the prepaid principal which is substantially lower than the rates contained in notes which other courts have found to be reasonable and enforceable. Finally, defendant contends that it did not violate any implied covenant of good faith and fair dealing. Defendant argues that it did nothing more than to insist upon plaintiff's compliance with the terms of the Mortgage Note. Defendant simply refused to waive its clear legal right to receive the prepayment premium.

In response, plaintiff argues that the court should not enforce defendant's prepayment premium because it would lead to an inequitable result. According to plaintiff, defendant has made no attempt to demonstrate its financial loss associated with plaintiff's prepayment. Plaintiff asserts that defendant's only reasons for enforcing its prepayment premium are to penalize plaintiff and to obtain a windfall. Further, plaintiff contends that defendant's prepayment provision is an unenforceable liquidated damages clause because the amount of the premium was not a reasonable estimate of the actual damages.

Plaintiff argues that the prepayment premium is unreasonable and unenforceable for three reasons. First, although the Mortgage Note allowed prepayment without penalty as of November 1, 1998, any prepayment prior to that date included a prepayment penalty computed through March 1, 1999, the maturity date of the loan. As a result, defendant was paid a present value significantly in excess of the present value of the payments which defendant would have received if plaintiff had asserted its contractual right to prepay without penalty on or after November 1, 1998. According to plaintiff, it "prepaid the loan only 3 months before prepayment

was permitted without a Prepayment Premium; however, the Prepayment Premium was calculated as though the loan was prepaid 7 months early." Second, the prepayment premium outlined in the Mortgage Note was equal to the spread between the yield on the Mortgage Note and the yield on U .S. Treasury Notes having the closest maturity date to the maturity date of the Mortgage Note. However, the prepayment premium did not provide for the present value discount of the spread. Without a present value discount, plaintiff asserts that defendant will receive more money than if the Mortgage Note was paid in full in accordance with its terms on March 1, 1999. Third, the prepayment premium was based on the assumption that defendant was entitled to invest the prepayment proceeds in U.S. Treasury Notes rather than comparable first mortgage notes for the remaining term of the parties' Mortgage Note. Plaintiff contends that such a method of calculation overcompensated defendant. By paying the prepayment premium, plaintiff enabled defendant "to get the yield associated with a first mortgage bond at the much lower risk associated with U.S. Treasury security."

In addition, plaintiff argues that the terms of the Mortgage Note were not clear and unambiguous. While the Mortgage Note requires that the prepayment premium be calculated using the maturity date of the Mortgage Note, it also provides that a prepayment premium will not be required for a prepayment made on or after November 1, 1998. Plaintiff asserts that both provisions should be read together to logically conclude that any prepayment premium should be calculated through November 1, 1998, not through the maturity date of March 1, 1999. Further, plaintiff contends that defendant miscalculated the prepayment premium, even if the court accepts the position taken by defendant. Finally, plaintiff argues that defendant breached the implied covenant of good faith and fair dealing. According to plaintiff, defendant has no right to insist on the enforcement of an unenforceable express contractual right. Plaintiff argues that defendant could have taken reasonable steps, without jeopardizing its own position, to protect its investment without invoking the prepayment premium provision. Through the prepayment premium, plaintiff asserts that defendant "secured more than the benefits of the bargain and imposed unnecessary costs" on plaintiff.

■ In the instant case, the court finds that the contract language was clear and unambiguous. The parties' contract specifically allowed plaintiff to repay the debt prior to the loan's maturity date of March 1, 1999. However, if plaintiff chose to repay the debt prior to November 1, 1998, it agreed to pay defendant a prepayment premium calculated from the date of prepayment through the maturity date, or 1% of the prepaid principal amount, whichever was greater. The method used to calculate the prepayment premium was clearly outlined in the parties' agreement. Therefore, if plaintiff wanted the prepayment premium provision to include: (1) a present value discount; (2) a provision calculating the prepayment premium only through November 1, 1998; and, (3) a provision calculating interest rates using first mortgage notes instead of Treasury notes, plaintiff should have negotiated for the inclusion of such provisions prior to the time the Mortgage Note was executed.

■ Plaintiff attempts to convince this court that it had no choice but to accept the terms of defendant's Mortgage Note. However, plaintiff is a sophisticated borrower. The evidence suggests that plaintiff did in fact negotiate for changes in the Mortgage Note prior to executing the document. According to Mary Pat O'Meara, an investment officer in defendant's Real Estate Investment Group, the prepayment premium was based upon a standardized provision used in defendant's commercial mortgage loans in which prepayment was allowed. (Affidavit of Mary Pat O'Meara, October 1, 1999, ¶ 6, p. 3.) However, the standard prepayment provision was modi-

fied to be more favorable to plaintiff in the following respects: (1) plaintiff was allowed to prepay the loan at any time during the loan term, rather than limiting prepayment only in the latter years of the loan; and, (2) the note permitted prepayment without the premium penalty at any time during a 120–day period prior to maturity, instead of the more typical period of 60 to 90 days prior to the loan's maturity date. *Id.*

■ The court does not find that the prepayment premium was in effect a liquidated damages provision. Neither party breached the terms or conditions of the Mortgage Note. Plaintiff did not breach the parties' contract by repaying the loan prior to the maturity date. The contract specifically allowed plaintiff to prepay the debt prior to the maturity date. However, plaintiff agreed to pay a prepayment premium if it exercised its right to prepay the debt prior to November 1, 1998. Because there was no breach of the parties' contract, the court will not review the prepayment premium as a liquidated damages provision.

■ Further, the court finds that the prepayment premium was reasonable. The prepayment premium was only approximately 2% of the prepaid principal. Monthly interest only payments on the Mortgage Note amounted to $189,503.59. Plaintiff prepaid the loan seven months prior to the maturity date. Therefore, a prepayment premium of $503,114 is not unreasonable. Other courts have found debt obligations with greater prepayment premium rates to be reasonable and enforceable. *See Lazzareschi Inv. Co. v. San Francisco Fed. Savings & Loan Ass'n,* 22 Cal.App.3d 303, 310–11, 99 Cal.Rptr. 417 (1971); *Bayside Gardens Apt. Ventures v. Security Pacific Savings Bank,* No. 34803–5–1, 1996 WL 442689 at * 5 (Wash. App. Div. 1 Aug.5, 1996) (unpublished). Although plaintiff provided the court with case law to support its contention that the prepayment premium provision in this case was unreasonable, the court notes that the

case law cited by plaintiff deals with bankruptcy court decisions Interpreting the reasonableness of prepayment premiums. Bankruptcy courts approach the issue of prepayment premiums from a different perspective and are subject to the direction of the Bankruptcy Code. Even bankruptcy courts have recognized that prepayment premiums are subject to different treatment in nonbankruptcy cases. *See Imperial Coronado Partners, Ltd. v. Home Federal Savings and Loan Ass'n,* 96 B.R. 997, 1001 (9th Cir.BAP 1989)("[A] lender may have a contractual right to collect the full amount of a prepayment premium under nonbankruptcy law.")

Additionally, plaintiff argues that the prepayment premium was miscalculated by defendant. In the event that the prepayment premium was incorrectly calculated, defendant has assured this court that it will refund plaintiff any amount overpaid. (Defendant's Reply Brief, p. 2 n. 1.) Therefore, defendant must conduct a prompt review of the methods it used to calculate the prepayment premium and correct any potential error.

■ Finally, because defendant did nothing more than to enforce the terms of the parties' agreement, the court finds that defendant did not violate any implied covenant of good faith and fair dealing. Defendant was not required to waive its rights and accept plaintiff's alternative approaches to the prepayment premium problem.

For the reasons stated above, defendant's motion for summary judgment hereby is **GRANTED**. Accordingly, plaintiff's motion for summary judgment hereby is **DENIED**. Judgment to enter for defendant.

SO ORDERED.